### WILKS v. GREACEN.

(Supreme Court, Appellate Division, First Department. March 20, 1913.)

FRAUDULENT CONVEYANCES (§ 58*)—CREDITORS—HUSBAND AND WIFE.

Where a debtor, while in ill health and unable to successfully conduct his business and make collections, at the solicitation of his wife, who has become alarmed at the condition of his business, conveys to her property far in excess of a debt which he owes her, but retains more than enough to meet his outstanding debts, the conveyance to his wife is not void as in fraud of creditors, though he afterwards becomes insolvent.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 138, 140, 144–147, 158; Dec. Dig. § 58.*]

Appeal from Special Term, New York County.

Action by Elizabeth A. Wilks against Rebecca Greacen, individually and as executrix under the last will and testament of Robert A. Greacen, deceased. From judgment for plaintiff, defendant appeals. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Frederick J. Moses, of New York City (Robert F. Greacen, of New York City, on the brief), for appellant.

W. W. Shaw, of New York City, for respondent.

LAUGHLIN, J. This is a suit in equity by a judgment creditor of Robert A. Greacen, who was made a party defendant, but died pending the action, to set aside eleven deeds of real estate made by him to the defendant, Rebecca Greacen, who was his wife; but as it was alleged that at the time of the commencement of the action she retained title to only two of the parcels and had conveyed the others to strangers to the action, the judgment affects only the two parcels, title to which she retained.

The theory of the action, as shown by the complaint, is that the premises were conveyed by the husband to his wife without consideration and for the purpose of defrauding creditors, and pursuant to a fraudulent scheme and conspiracy entered into between him, his wife, and his son, Robert F. Greacen, whereby he was to assign, transfer, and convey all of his property, both real and personal, to them for the purpose of defrauding his creditors, and that when this was consummated he was left insolvent. The deeds of the premises, title to which remained in the defendant at the time of the commencement of the action, bear date the 15th of June, 1897, and were acknowledged on the 9th day of July thereafter, and were recorded on the 5th and 8th days of October, respectively, of the same year. Each of these deeds contains a recital that it was executed in consideration of $1, and no other consideration is expressed.

The learned trial court found that the transfers by the husband to his wife were made with the fraudulent intent and purpose of permitting him to divest himself of his property for the purpose of hindering and delaying his creditors, and "for the purpose of rendering himself insolvent"; but there is no finding that by the execution and delivery of the conveyances the judgment debtor was rendered insolvent. The defendant separately requested the court to find that the execution and delivery of the conveyances did not render the judgment debtor insolvent, and that he remained solvent and retained assets exceeding in value the total amount of his indebtedness; but the court refused so to find. The court did, however, find that at the time he executed the conveyances to his wife he owned property of the value of $144,636.77, exclusive of the property conveyed that day or thereafter conveyed to her; and that at that time his total indebtedness did not exceed the sum of $130,562.03, which included an indebtedness of $21,246.40 to his wife, and the evidence shows that the conveyances to her were executed in part consideration of this indebtedness. It

follows from these findings that, if the judgment debtor had executed all of the conveyances to his wife on the day he executed the first two, he would have still retained property in excess of his total indebtedness of the value of at least $35,321.14.   There is no finding that the judgment debtor assigned or transferred any property, other than the real estate to which reference has been made, to his wife for the purpose of defrauding his creditors; and there is no finding that he transferred any property to his son for the purpose of defrauding creditors, or that he and his son entered into a conspiracy for the purpose of defrauding creditors; nor is there any finding that he and his wife and son entered into a conspiracy for the purpose of rendering him insolvent, as alleged in the complaint, or that the conveyances of his property thereafter made to his wife were made pursuant to any such conspiracy.

The plaintiff's judgment was recovered on the 26th day of April, 1905, and is for the sum of $2,712.57.   It was on an indebtedness for money loaned, represented by a promissory note executed by the judgment debtor on the 20th day of May, 1895, whereby he promised to pay to the plaintiff the sum of $1,750, on demand, with interest.   The judgment debtor at that time was engaged in the wholesale liquor business, and continued so to be until July 1, 1897, when he sold out and retired from business.   In this connection it should be observed that the plaintiff's husband was entirely familiar with the judgment debtor's financial circumstances, at least down to March, 1896, having been until then his "confidential man and bookkeeper," as he described his employment, and assisted the judgment debtor in his business from time to time thereafter.   The evidence shows that the judgment debtor transferred his property to his wife to satisfy his indebtedness to her, and to enable her to support their family of six infant children, one of whom was deaf, dumb, and blind, and to avoid the expenses of administration in the event of his death, of which he was apparently apprehensive, as he was in bad health at the time.

It appears from the evidence that nearly all of the indebtedness which he owed at the time of the conveyances to his wife was paid fully or secured by collateral at or about that time, and that the indebtedness not paid or secured consisted of three claims.   One of them was the plaintiff's, upon which she did not commence this action until January 16, 1905.   Another was a merchandise account, aggregating $2,283.43, to the firm of Smith & Darling, and the judgment debtor held an unpaid note and check of one of the members of the firm, together aggregating $4,000, and these claims were then involved in litigation, and the action has never been brought to trial.   The third was an indebtedness of $2,336.45, owing to Daniel and Rose Longworth, and it was settled by allowing the creditors to occupy premises of the judgment debtor without paying rent.

The principal item of evidence, other than the conveyances of property and the judgment debtor's financial condition at the time, upon which the charge of fraud is predicated is the testimony of one Mc-Clenahan, who was the president of a bank to which at the time the judgment debtor owed between $60,000 and $70,000, secured by two

parcels of real property of the value of $77,000, which he had deeded to the bank, but the defendant had not joined in the conveyance. After McClenahan became aware of the execution of the conveyances in question, he had an interview with the judgment debtor, in which he complained that the property should not have been conveyed without consulting with some of the bank officials, and requested a new deed of the same premises, which the husband had conveyed alone to the bank, in which the wife should join in order to bar her inchoate right of dower, and this request was complied with. McClenahan testified that the husband, in the presence of the defendant, assigned as his reason for having made the conveyances that he "had been unfortunate in making collections in his business, and Mrs. Greacen had been importuning him for some time to deed these properties to her." This is controverted by the testimony of the defendant, but the judgment debtor was not interrogated with respect to it.

We are of opinion that the inference of fraud should not be drawn from the testimony of McClenahan, assuming it to be true. It is entirely consistent with the execution of the conveyances for the lawful purposes already stated. If, through ill health, he had not been able to conduct his business as successfully as theretofore, or he had been unfortunate in making collections, his wife might have become solicitous, or even alarmed, and have urged him to retire from business and transfer all of his property, not required to pay his debts, to her, without becoming justly chargeable with a fraudulent purpose.

The main ground upon which the respondent relies is that the conveyances were executed for the purpose of defrauding creditors of the judgment debtor, or that they were voluntary conveyances, and that it is immaterial whether or not the grantor remained solvent, and the cases of Kerker v. Levy, 206 N. Y. 109, 99 N. E. 181, and Smith v. Reid, 134 N. Y. 568, 31 N. E. 1082, are relied upon in support of this contention. There can be no doubt but that the value of the premises conveyed to the wife amounted to several times her husband's indebtedness to her; and therefore it is contended by counsel for the respondent that the conveyances were voluntary, and that they were presumptively fraudulent as against creditors. There is such a presumption; but it is not *conclusive,* and we are of opinion that it clearly appears here that there was no fraudulent intent in fact, either on the part of the grantor or the grantee, and that he retained sufficient property to pay his debts existing at the time, and that he intended to pay them. If plaintiff had attempted to enforce her claim within a reasonable time after the conveyances in question, the judgment debtor retained property ample to insure its satisfaction. The settlement of the case does not show that the record contains the exceptions taken by both parties on the trial, as required by the ruling of this court in Bonnette v. Molloy, 153 App. Div. 73, 138 N. Y. Supp. 67; but, inasmuch as it was settled since the publication of the decision in Bonnette v. Molloy, we assume that if there were any exceptions to the exclusion of evidence taken by the respondent they would have been incorporated in the record, and therefore the case falls within our

ruling in the Bonnette Case, whereby final judgment is granted on appeal in causes tried before the court.

These views with respect to the facts are not consistent with findings made by the trial court, numbered 8, 26, 27, 28, 29, and 31, which are therefore reversed, and the judgment is reversed, with costs, and final judgment awarded to defendant, dismissing the complaint, with costs. All concur.