BENJAMIN R. KITTREDGE, Plaintiff, v. WILLIAM C. LANGLEY, Defendant.

Supreme Court, New York County, June 19, 1928.

Partnership — action on theory of creditor's bill in equity against special partner — unpaid creditor of firm is obliged to prove firm is insolvent at time of dissolution or that withdrawal was intended as fraud on firm creditors in order to fasten liability on special partner — plaintiff's failure to show this and to obtain judgment binding firm, warrants dismissal of complaint.

This is an action on the theory of a creditor's bill in equity against a special partner by a person asserting a claim against the firm. Plaintiff delivered bonds to a firm of stockbrokers, which transferred some of the bonds to another brokerage house in which defendant was a special partner. The latter firm sold the bonds to third parties and then the firm, to which plaintiff had delivered the bonds, went into bankruptcy. Plaintiff gave notice to defendant's firm that the transfer to that house was a misappropriation of his property. Defendant's firm dissolved, pursuant to the date fixed in the articles of copartnership, and all of its admitted liabilities were paid or taken over and later paid by the successor firm. The defendant received back his special contribution from the firm and the general partners received back assets in excess of any amount claimed by the plaintiff.

Since an unpaid firm creditor, in order to fasten liability upon a special partner who has withdrawn his capital upon dissolution of the firm, is obliged to prove that the firm was insolvent at the time of dissolution or was left insolvent as a result of the withdrawal, or that the withdrawal was in some other way intended as a fraud upon firm creditors, plaintiff's failure to show this and his further failure to obtain a judgment binding the firm and to show that the assets left with the general partners actually were insufficient in value to discharge all liabilities, including that to himself, warrant the dismissal of the complaint.

ACTION on the theory of a creditor's bill in equity against a special partner by a person asserting a claim against the firm.

*Satterlee & Canfield* [*George F. Canfield* and *R. Randolph Hicks* of counsel], for the plaintiff.

*Seibert & Riggs* [*Abraham S. Gilbert* and *Royal E. T. Riggs* of counsel], for the defendant.

FRANKENTHALER, J. This case is the sequel of *Kittredge v. Grannis*, the career of which has covered twelve years in the courts, including four appeals to the Court of Appeals. In April, 1908, the plaintiff delivered certain bonds to Coster, Knapp & Co., a firm of stockbrokers. A few days later this firm transferred some of the bonds to Grannis & Lawrence, another firm of stockbrokers, who paid $86,000 for the bonds and sold them to third parties for a like amount. Shortly thereafter Coster, Knapp & Co. went

into bankruptcy.   The plaintiff claimed that the transfer by Coster, Knapp & Co. to Grannis & Lawrence was a misappropriation of his property and gave prompt notice to that effect to the latter. The defendant in the present action, Langley, was then a special partner in Grannis & Lawrence, the general partners being Grannis and Lawrence.   The transaction in question was handled by Lawrence.   Soon afterwards, at or about the expiration date fixed in the articles of copartnership, the firm of Grannis & Lawrence was dissolved.   Langley received back his special contribution of $80,000, and the general partners received back assets in excess of any amount claimed by the plaintiff.   All of the admitted liabilities of the firm were paid or were taken over and later paid by the successor firm.   In 1914 the plaintiff commenced an action at law in this court, naming Grannis, Lawrence and Langley as defendants.   The theory of that action was that the defendants as partners had converted the plaintiff's bonds.   The complaint was later dismissed as to Langley on the ground that he was merely a special partner.   Grannis was never served, being then a resident of Massachusetts and having no property in this State.   At the first trial Lawrence alone defended.   The jury found for the plaintiff and a judgment was entered upon the verdict against Grannis and Lawrence as partners in the firm.   This was done on the theory that section 1932 of the former Code of Civil Procedure (Civ. Prac. Act, § 1197) was applicable.   That section provides that if the summons is served upon one of several defendants alleged to be jointly indebted on a contract, the plaintiff on recovering may take judgment against all the defendants.   Thereafter Grannis appeared specially and moved to have the judgment amended so as to strike out his own and also the firm name.   His motion was granted by the Appellate Division, that court taking the view that section 1932 did not apply to actions in tort (*Kittredge* v. *Grannis*, 200 App. Div. 478).   The Court of Appeals affirmed without opinion (234 N. Y. 501).   Meanwhile Lawrence had appealed from the judgment itself.   The Appellate Division affirmed (204 App. Div. 870), but the Court of Appeals reversed and ordered a new trial (236 N. Y. 375).   At the second trial the plaintiff was permitted to amend his complaint so as to waive the tort and set forth a cause of action on the theory of an implied contract for the proceeds of the sale of the bonds, as money received to his use.   The plaintiff again won a verdict, and once more a judgment was entered against Grannis and Lawrence, " copartners trading under the firm name and style of Grannis & Lawrence."   For the second time Grannis intervened by special appearance and asked to have his name stricken from the judgment, with the final result that in the Court of Appeals

(three judges dissenting) he was successful. The basis of this decision was that section 1197 of the Civil Practice Act did not apply where the action as originally commenced was a tort action. (244 N. Y. 182.) At the same time the appellate courts were hearing the appeal of Lawrence from the identical judgment. It was affirmed as to Lawrence both in the Appellate Division and in the Court of Appeals (215 App. Div. 486; 244 N. Y. 168). Pending the ultimate outcome of these appeals, the plaintiff commenced the present action against Langley. The plaintiff proceeds on the theory of a creditor's bill in equity, alleging the conversion of his securities by the firm of Grannis & Lawrence, the recovery of judgment with execution returned unsatisfied, the dissolution of the partnership, the repayment to Langley of his special contribution of $80,000, the present insolvency of both Grannis and Lawrence, and that the partnership of Grannis & Lawrence has no assets other than the money withdrawn by Langley. This action, then, is a suit in equity against a former special partner by a person asserting a claim against the firm. It is not contended that Langley became liable in his individual capacity or that by reason of some violation of the statutory provisions applicable to a limited partnership he became obligated as a general partner. His liability, if any, rests upon the withdrawal by him of his $80,000 contribution to the capital of the firm at the expiration of the partnership, leaving the plaintiff unpaid. The first question is whether the plaintiff has sufficiently established his standing as a firm creditor to pursue Langley as a special partner. It is earnestly and ably argued by the defendant that the plaintiff, with a judgment solely against Lawrence, has not achieved this, and that the present action, therefore, cannot be maintained. It is undoubtedly the general rule that the plaintiff in such a suit must show that he has already recovered judgment against the general partners and that execution has been returned unsatisfied. (*Fuhrmann* v. *von Pustau*, 126 App. Div. 629; *Bell* v. *Merrifield*, 28 Hun, 219.) This explains the zeal with which the plaintiff sought to have judgment in the former action run against the firm of Grannis & Lawrence, as well as the struggles of his adversaries to prevent the entry of such a judgment. Due, however, to the absence of Grannis from the State and the fact that the statute permitting a judgment against joint debtors in an action where only one is served is restricted to suits on contract, the plaintiff has been unsuccessful in his efforts to obtain a judgment binding the firm. Plaintiff asserts that the Court of Appeals recognized that although he " was not entitled to a judgment *at law* in *form* against the firm, he had established his claim as a firm creditor." With this I cannot agree.

The opinion of LEHMAN, J., indicates quite clearly that the court regarded the action as one against Lawrence in his individual capacity, the partnership being unrepresented (p. 194): " In view of the allegations of the original complaint the defendant Lawrence appeared at the trial only as an individual in defense of his own interests; the court could not give judgment which would affect the interests in joint property of other defendants not served. Such defendants were not called upon to defend, and the defendant Lawrence could not represent them, for without their appearance no judgment could be entered in their favor or against them. * * * Summons served upon one copartner or joint owner in other actions, even though all the copartners or joint owners are named as party defendants, can hardly be notice that the party served is called upon to defend the interests of all when no judgment may be entered which could affect joint interests; when the party served could not be heard in defense of parties not served, and when he could not in any way bind them." Under the circumstances, with Grannis a non-resident and no property in this jurisdiction which could be attached, it is evident that the plaintiff was unable, at least in this State, to obtain a judgment against the partnership and thereby establish his standing as a firm creditor. It may be that the rule requiring such a judgment should be relaxed to meet the difficult and inequitable situation presented. Otherwise a special partner would be rendered immune against suit on a tort claim against the partnership merely because one or more general partners resided without the State. It appears to me that plaintiff has exhausted all his legal remedies and that he has done everything possible to procure a judgment against the partnership. It would seem that nothing further ought to be required of him. Various analogies suggest themselves. In actions to set aside fraudulent conveyances the general rule is that the plaintiff must first show that he has obtained a judgment against the debtor with execution returned unsatisfied; yet the necessity of such a judgment is dispensed with in a proper case, where the plaintiff shows that its procurement is impossible. Again, in actions by corporate creditors against stockholders, it is a general requirement that the plaintiff must establish, as a condition precedent to the maintenance of his suit, that he has obtained a judgment against the corporation, with execution returned unsatisfied; this condition is, however, likewise excused where the creditor can show that he has exhausted his legal remedies against the corporation and that, through no fault of his own, such a judgment cannot be had. Assuming, therefore, that plaintiff may maintain this action for the reasons indicated, he must nevertheless establish that the *partnership*

converted his bonds before he can be awarded a recovery against the defendant as a special partner. No proof of such a conversion by the firm of Grannis & Lawrence has been offered before me. Plaintiff evidently relies upon the judgment in his favor against Lawrence, but this, as previously pointed out, adjudicates merely that Lawrence, *as an individual,* converted the bonds. There could be no determination that the partnership converted them in an action in which it was not represented. It is, however, unnecessary to determine whether plaintiff is entitled to maintain the present suit in equity and whether he has sufficiently proved a conversion by the partnership. Even if both these questions are resolved in plaintiff's favor, he has, nevertheless, failed on the whole case to establish a right to judgment against the defendant. At the time of the dissolution all admitted debts of the firm were paid or were provided for, and in addition the two general partners took assets more than sufficient to pay the disputed claim of the plaintiff. In other words, the firm was then solvent and was not rendered insolvent by Langley's withdrawal of his special capital on dissolution. The insolvency of the general partners came later. How much later we are not informed. These facts raise the broad question as to the liability to an unpaid firm creditor of a special partner who on dissolution receives back his special contribution, where the general partners were left solvent, but later became unable to meet a claim against the firm. Must the unpaid creditor in such an action show not only the recovery and non-satisfaction of judgment against the general partners, but also the fact that the withdrawal of the special contribution on dissolution left the general partners unable to pay the firm debts? The statutes regulating limited partnerships, as they existed in 1908, shed no light upon this point, except for general definitions. I am of the opinion that the unpaid firm creditor, to fasten liability upon a special partner who has withdrawn his capital upon dissolution of the firm, is obliged to prove that the firm was insolvent at the time or was left insolvent as a result of the withdrawal, or that the withdrawal was in some other way intended as a fraud upon firm creditors. It is not enough for him to show that many years later he could not collect from the general partners. (*Baily* v. *Hornthal,* 154 N. Y. 648; *Bliss* v. *Hornthal,* 33 App. Div. 225; *Bell* v. *Merrifield, supra;* 109 N. Y. 202.) In these cases unpaid judgment creditors were pursuing special partners who had withdrawn their capital on or after dissolution. The courts treated the issue of solvency or insolvency at the time of dissolution as of controlling importance. It is true that there is language in *Fuhrmann* v. *von Pustau (supra)* which, read alone, might indicate that the money

withdrawn by the special partner was a trust fund for firm creditors, who might reach it by merely proving their inability to collect from the general partners. The point was not directly involved there, however, since the complaint was held bad for another reason, and I doubt that the court intended to lay down a rule at variance with the previous authorities which were cited with approval in that very case. The situation in fraudulent conveyances is somewhat akin to that under discussion. Where the remaining assets of the debtor are more than sufficient to pay his liabilities, the conveyance is unassailable, in the absence of a fraudulent purpose. The fact that the debtor later becomes insolvent is not enough. (*Wilks* v. *Greacen*, 155 App. Div. 623, 627, 628; *Carstairs* v. *Spear*, 201 id. 418, 420.) The facts here presented are not to be confused with a situation where the special partner at the time of dissolution and recovery of his capital has the *bona fide* belief that the assets in the hands of the general partners are ample to meet firm obligations, but is mistaken in such belief. Plaintiff here has failed to show that the assets left with the general partners actually were insufficient in value to discharge all liabilities, including that to himself. Defendant has shown the contrary. In the light of the foregoing it is of course fruitless to consider the point of laches arising out of plaintiff's delay in the prosecution of his rights, coupled with a change in the financial condition of the general partnership. It follows that the judgment must be for the defendant, with costs. The plaintiff has already submitted findings. Let defendant submit findings and proposed judgment.