## WAGNER TRADING COMPANY, Respondent, *v.* BATTERY PARK NATIONAL BANK, Appellant.

**Banks and banking — corporations — when bank liable for amount of checks of corporation indorsed by president thereof and deposited in such bank for his personal use.**

1. Any person taking checks made payable to a corporation, which can act only by agents, does so at his peril and must abide by the consequences if the agent who indorses the same is without authority, unless the corporation is negligent or is otherwise precluded by its conduct from setting up such lack of authority in the agent.

2. The president of a corporation indorsed checks payable to it and deposited them to his personal account with the defendant, which collected the proceeds in the usual course of banking and paid them out on the personal checks of the president. *Held*, that the president had authority to indorse checks only for the purposes of the corporation's business and not to transfer them personally or for his personal use. When the defendant accepted the checks payable to the corporation and indorsed by the president for deposit to the account of himself, it did so at its peril to ascertain whether the president had authority to indorse them and by his indorsement transfer the money to be paid thereon to his personal account.

3. In such case it was not error to exclude evidence offered to show that the corporation by an examination of its books, checks and drafts could have discovered the defalcation of its president and that the failure so to do was negligence. The action is for money belonging to the corporation and traced into the possession of the defendant, and the evidence offered was immaterial to this *tort feasor* and his agent, the defendant bank. (*Standard S. S. Co.* v. *Corn Exchange Bank*, 220 N. Y. 478; *Claflin* v. *Farmers & Citizens Bank of L. I.*, 25 N. Y. 293, followed; *Martin* v. *Niagara Falls Paper Manufacturing Co.*, 122 N. Y. 165, distinguished.)

*Wagner Trading Co.* v. *Battery Park Nat. Bank*, 184 App. Div. 885, affirmed.

(Argued December 12, 1919; decided January 20, 1920.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 6, 1918, unanimously affirming

a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Francis E. Neagle* and *Eugene Cougleton* for appellant. Christopher J. Wagner, as president of the plaintiff corporation and as general manager of its affairs, had implied authority to indorse and transfer its checks and give good title to his indorsees. (*Howland* v. *Myer*, 3 N. Y. 290; *Hiawatha Iron Co.* v. *Strange Paper Co.*, 106 Wis. 111; 1 Daniel on Neg. Inst. § 394; 1 Randolph on Comcl. Paper, § 368; *Merchants' Bank* v. *Citizens G. L. Co.*, 159 Mass. 505; *Martin* v. *N. F. P. Mfg. Co.*, 122 N. Y. 165.) The form of the checks mentioned in the complaint and their indorsement was not sufficient to charge the defendant with bad faith in receiving the checks and paying out the proceeds. (Daniel on Neg. Inst. § 776; Crawford on Neg. Inst. 102; *Carlisle* v. *Norris*, 215 N. Y. 400; *Bischoff* v. *Yorkville Bank*, 218 N. Y. 106; *Ward* v. *City Trust Co.*, 192 N. Y. 61.) The court erred in excluding defendant's evidence showing estoppel and negligence on the part of plaintiff. (*Standard Steam Specialty Co.* v. *Corn Ex. Bank*, 220 N. Y. 478; *Philips* v. *Mer. Nat. Bank*, 140 N. Y. 556; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 N. Y. 30; *City Nat. Bank* v. *Nat. Park Bank*, 32 Hun, 110; *Martin* v. *Webb*, 110 U. S. 7; *Morgan* v. *U. S. M. & T. Co.*, 208 N. Y. 218; *Pratt* v. *Union Nat. Bank*, 79 N. J. L. 117; *Leather Mfrs. Bank* v. *Morgan*, 117 U. S. 96; *Hardy* v. *Chesapeake Bank*, 51 Md. 562; *Third Nat. Bank* v. *Merchants Nat. Bank*, 76 Hun, 475.)

*Neil P. Cullom* for respondent. No interest in the checks was transferred to the defendant by the unauthorized indorsement and delivery thereof and, by its acts, defendant became liable to plaintiff for the value thereof. (*Ward* v. *Trust Co.*, 192 N. Y. 61; *Schmidt* v. *Garfield Bank*,

64 Hun, 298; 138 N. Y. 631; *R. & C. T. R. Co.* v. *Paviour*, 164 N. Y. 281; *Moch* v. *Security Bank*, 176 App. Div. 842; 225 N. Y. 723; *Porges* v. *U. S. M. & T. Co.*, 203 N. Y. 181; *Robinson* v. *Chemical Nat. Bank*, 86 N. Y. 404; *Comstock* v. *Hier*, 73 N. Y. 269; *Silver* v. *Krellman*, 89 App. Div. 363; *Niagara Woolen Co.* v. *Pacific Bank*, 141 App. Div. 265; *H. C. Ry. Co.* v. *Knickerbocker Trust Co.*, 198 N. Y. 422.) The form of the checks and the indorsements thereon clearly indicate that the same were corporate property and constituted actual notice to defendant of Wagner's misappropriation. (*Ward* v. *Trust Co.*, 192 N. Y. 61; *Wilson* v. *Met. Co.*, 120 N. Y. 145; *Fidelity & Deposit Co.* v. *Queens Trust Co.*, 226 N. Y. 225.) The defenses of negligence and estoppel are wholly without merit. (*Jewett* v. *Miller*, 10 N. Y. 402; *N. Y. Rubber Co.* v. *Rothery*, 107 N. Y. 310; *Continental Securities Co.* v. *Belmont*, 206 N. Y. 18; *Pollitz* v. *Wabash R. R. Co.*, 207 N. Y. 113; *Ward* v. *Trust Co.*, 192 N. Y. 61; *Fidelity & Deposit Co.* v. *Queens Co. Trust Co.*, 226 N. Y. 225; *Schmidt* v. *Garfield Bank*, 64 Hun, 298; 138 N. Y. 631.)

ELKUS, J. The plaintiff is a New York corporation. It was incorporated in April, 1910, at which time it acquired all the assets and business formerly conducted by one Christopher J. Wagner, who became its president, which office he held during the time of all the transactions here in question. Wagner also acquired 180 shares of the total 400 shares of the capital stock of the Wagner Trading Company at the time of its incorporation.

Section 4 of article 3 of plaintiff's by-laws provides:

" The treasurer shall have the care and custody of *all* the funds and securities of the corporation and shall deposit the same in the name of the corporation in such bank, banks, or trust companies as the directors may elect. He may sign checks, drafts or orders for the payment of money, but all checks and notes of the corporation signed by him shall be countersigned by such

persons as may be designated for that purpose by the board of directors."

By article 3, section 2, of the by-laws the president was authorized to sign and execute contracts in the name of the company when authorized to do so by the board of directors, and also to sign checks, drafts and orders for the payment of money, but all checks and notes of the corporation, signed by him, shall also be countersigned by persons designated for that purpose by the board of directors.

In pursuance of this by-law, on April 7, 1910, the board of directors adopted a resolution providing that checks might be signed by the president, vice-president, secretary or treasurer, but that such checks shall be countersigned by one Leggett or one Sloane or by any officer of the corporation.

The plaintiff had its bank account with the Chatham and Phœnix Bank, but had no account with the defendant or any other bank.

A portion of the plaintiff's business was exporting merchandise to South America. Drafts were drawn by the plaintiff on the South American customer and sent to the Bank of New York for collection, and in some cases advances were made by the Bank of New York upon these drafts while in process of collection. The proceeds of these drafts were paid and some advances thereon were made by cashier's checks of the Bank of New York to the order of Wagner Trading Company. These checks, to the number of fifteen, were indorsed " Wagner Trading Company, C. J. Wagner, Pres.," the signature of " C. J. Wagner " being in the handwriting of C. J. Wagner, the president of the plaintiff corporation, the remainder of the indorsement being a rubber stamp impression. The first of these checks was dated May 17, 1915, and indorsed May 25, 1915. The last check was dated October 30, 1916, and indorsed October 31, 1916.

It is stipulated that no part of the " proceeds of said

checks, to wit — $14,117.29, has been received by the plaintiff except the sum of $85.37."

C. J. Wagner had a personal account with the defendant. In this account he deposited, among others, thirty-six checks representing salary paid to him by the plaintiff between February 2, 1914, and April 3, 1916. These checks were drawn on the Chatham and Phœnix National Bank to the order of " C. J. Wagner," signed " Wagner Trading Company, C. J. Wagner, Pres." On the left margin of the check appears in print " Wagner Trading Company ........ Countersigned," with the signature in ink of W. H. Leggett, Jr., above the word " Countersigned." These checks were indorsed by C. J. Wagner and collected through the New York Clearing House in the usual course of banking business. This statement shows the relation of the parties.

Wagner, having indorsed the fifteen checks made payable by the Bank of New York to the Wagner Trading Company, in the manner described, deposited them to the credit of his personal account with the defendant, which collected the proceeds in the usual course of banking, and held same for Wagner and as his agent " paid out the proceeds thereof on the personal checks of Christopher J. Wagner," to use the exact words of the stipulation of the parties. The action is for conversion.

The facts showing the conversion are complete. Wagner had authority to indorse the checks, although no by-law or resolution is in evidence to that effect, but only for the purposes of the corporation's business and not to transfer the checks to himself personally or for his personal use. The defendant endeavored to prove estoppel and negligence of the plaintiff. The trial court rightly excluded all such evidence. The plaintiff had no relations with and owed no special duty to the defendant. It was not a depositor of the defendant. When the defendant accepted the deposit of Wagner and became his banking agent, the defendant was in complete control of its relations with

Wagner. It could, to safely protect itself in its dealings with Wagner, inquire as to his relations with the plaintiff, the authority he possessed, and could insist upon an examination of the plaintiff's by-laws and minutes if it thought that necessary to protect itself. When it accepted the checks payable to the plaintiff and indorsed by Wagner as president of the plaintiff for deposit to the account of Wagner himself, it did so at its peril to ascertain whether Wagner had authority to indorse them and by his indorsement transfer the money to be paid thereon to his personal account. (*Cheever* v. *Pittsburgh, S. & L. E. R. R. Co.*, 150 N. Y. 59; *Ward* v. *City Trust Co. of N. Y.*, 192 N. Y. 61, 71.) If Wagner had no such authority, title to the money in question never passed to the defendant and if it received it, it did so without authority and must account and make payment to the owner. (*Schmidt* v. *Garfield National Bank*, 64 Hun, 298; affirmed, 138 N. Y. 631; *Sims* v. *U. S. Trust Co. of N. Y.*, 103 N. Y. 472; *Fidelity & Deposit Co. of Maryland* v. *Queens County Trust Company*, 226 N. Y. 225, 233.)

The transaction and decision are not affected by the fact that relying upon the funds it supposed were deposited by Wagner, the defendant paid out funds upon Wagner's personal check drawn upon it. To do so would be to charge the plaintiff because of transactions with which it had no connection.

The rule governing this case is well stated in *Standard S. S. Co.* v. *Corn Exchange Bank* (220 N. Y. 478, 481), where POUND, J., says:

" Any person taking checks made payable to a corporation, which can act only by agents, does so at his peril and must abide by the consequences if the agent who indorses the same is without authority, unless the corporation is negligent or is otherwise precluded by its conduct from setting up such lack of authority in the agent.

" If the original indorsement was authorized, the diversion of the funds after indorsement would not make it a

forgery; but, if the original indorsement was unauthorized, parties dealing with the wrongdoer and innocent parties alike were bound to know the lack of the agent's authority to convey title away from the true owner to any one."

Assuming as we do that Wagner had general authority to indorse checks for the plaintiff's corporate purposes, clearly this does not authorize him to indorse checks to his own order and appropriate the money to his own personal use, and the nature of this transaction was such as to warn defendant that the checks were being diverted from usual business channels.

A case in point, and far stronger for the defendant than the case at bar, is that of *Claflin* v. *Farmers & Citizens Bank of L. I.* (25 N. Y. 293). There checks were drawn by the president of the defendant bank personally, to the order of third persons, and such checks were certified by the said president as good. The payees parted with full value. There this court held, although the purchaser of the checks paid their full face for them and acted in good faith, that the plaintiffs could not recover and the president had no power to accept his own drafts or checks in behalf of the bank. It was a palpable excess of authority and any person taking the paper was bound to inquire as to the power of the agent so to contract. The court said: " No business man of common intelligence could take these checks in good faith, and without suspicion or notice of this fraud." (p. 299.)

The defendant also claims error because the court excluded evidence tending to show that the plaintiff's officers by an examination or audit of its books and records could have discovered Wagner's defalcations and that the failure so to do was gross negligence. Also that an inspection of the stubs and draft books of the plaintiff would have revealed to the plaintiff's officers that the drafts, the proceeds of which were represented by the checks in suit, were long overdue and that statements of account, sent by the Bank of New York to the plaintiff, showed that

the drafts had been paid. The defendant also sought to show that the books of the plaintiff had not been balanced during all the time within which Wagner had deposited the checks in suit to his individual account and asked questions tending to show that the directors of the plaintiff never held a meeting. The defendant relies upon *Martin* v. *Niagara Falls Paper Manufacturing Company* (122 N. Y. 165) as authority for this claim.

In that case it appeared that the Niagara Falls Paper Manufacturing Company, a New York corporation, executed a mortgage which was given as a collateral and continuing security for the payment of all promissory notes made by it to the Manufacturers and Traders Bank. The plaintiff produced six promissory notes aggregating $60,000, all payable to the order of L. C. Woodruff and purporting to be made by the Niagara Falls Paper Manufacturing Company, by Lauren C. Woodruff, president, and indorsed by the payee, and all of the signatures and indorsements were in the handwriting of Woodruff. The notes in question were discounted by the bank pursuant to a written agreement between the company and the bank, by which Woodruff's authority, as president to bind the company, was expressly stated and it was also provided that the notes and drafts were conclusively deemed for the benefit of the company and it was liable for all such paper held by the bank. The agreement was executed by Woodruff, as president, on behalf of the company, pursuant to a resolution passed at a meeting of the trustees voted for by Woodruff and his daughter, who were the only trustees and held all the stock of the corporation.

It was upon such evidence that this court held in that case that the company made itself liable for the debt to the bank and that it was entirely competent for the stockholders of the corporation, no rights of creditors intervening and no fraud being claimed, to ratify Woodruff's acts and bind the corporation for the payment of the debt.

It was further shown in that case that there was no knowledge of the proceeds being used for Woodruff's benefit and as Judge BROWN said in that opinion (p. 173): " the facts of the case do not bring it within the rule which puts upon a holder of a promissory note or other corporate obligation the burden of proving by direct evidence that it was issued pursuant to a vote of the trustees, or for a corporate debt, or that the corporation received the consideration, in order to establish a corporate liability."

It appeared in that case that the company kept no bank account of its own; its banking business was done through the account of Woodruff and in that account was deposited indiscriminately the money received by the company and by Woodruff and from it were paid, on Woodruff's individual checks, substantially all the debts and liabilities of the corporation. It will thus be seen that the facts there were entirely different. The nature of the business carried on by the plaintiff herein did not raise the presumption that it was part of the president's duty to indorse checks and deposit them to his own personal account.

The trial court excluded the testimony offered upon the theory that the action was for money belonging to the plaintiff and that it had been traced into the possession of the defendant. The defendant's counsel acquiesced in this theory of the case and admitted upon the trial that he knew of no case where the claim of negligence could be maintained where there was no contractual relation such as a depositor has with a bank.

The courts are careful to guard the interests of commerce and to protect and strengthen its great medium, commercial paper, but they are also careful to defeat titles taken in bad faith or with knowledge actual or imputed which amounts to bad faith. (*Claflin* v. *Farmers & C. Bank of L. I.*, 25 N. Y. 293; *Rochester & Charlotte Turnpike Road Co.* v. *Paviour*, 164 N. Y. 281; *Moch Co.* v.

*Security Bank of N. Y.*, 225 N. Y. 723; *Robinson* v. *Chemical National Bank*, 86 N. Y. 404; *Spraights* v. *Hawley*, 39 N. Y. 441.)

The evidence offered was immaterial as to this *tort feasor* and his agent and would not have influenced the verdict. Wagner having no authority to indorse in behalf of the corporation for the purpose of applying the proceeds of these checks to his own account, could not transfer any greater right than he possessed to his agent for collection, the bank. (*Porges* v. *U. S. Mortgage & Trust Co.*, 203 N. Y. 181.) There was no offer of proof of express ratification by the plaintiff, with full knowledge of the facts.

I am, therefore, in favor of affirmance of the judgment, with costs.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND, McLAUGHLIN and ANDREWS, JJ., concur.

Judgment affirmed.