NEWALL v. BRIDGES.

1. BILLS AND NOTES—FRAUD—BONA FIDE HOLDER MAY SELL NOTE—
MAKER MAY DEFEND WHERE FRAUDULENT PAYEE IS HOLDER.
Where a note and mortgage are procured by fraud of payee, and
such instruments are subsequently assigned to innocent holder
for value, the written instruments are segregated from the
fraud of payee, and innocent holder holds them shorn of
payee's fraud, and thereafter they may be sold and trans-
ferred without regard to the fraud by which they were pro-
cured, but if they finally arrive by successive transfers in the
hands of original payee, and he institutes suit thereon, the
maker may defend though they have been through the hands
of innocent purchasers for value.

2. SAME—HOLDER HAS BURDEN OF PROVING HE IS BONA FIDE HOLDER
WHERE FRAUD CONCEDED.
In suit to set aside note and mortgage on ground of payee's
fraud, which is conceded, holder has burden of proving that
it is *bona fide* holder for value.

3. SAME—BURDEN OF PROOF—EVIDENCE—SUFFICIENCY.
In suit to set aside note and mortgage on ground of payee's
fraud, which was conceded, where evidence showed, among
other things, that the holder, defendant Texas national bank,
made loan to payee and accepted assignment of said note and
mortgage as security in violation of Federal banking law and
without making usual investigation as to value of real estate
mortgaged, trial court properly held that defendant had failed
to sustain burden of proof that it was *bona fide* holder for
value.

Appeal from Genesee; Brennan (Fred W.), J.
Submitted April 18, 1930. (Docket No. 22, Calendar
No. 34,846.) Decided October 3, 1930.

Bill by Julia E. Newall against C. W. Bridges, Sr.,
and others to set aside a real estate mortgage.
From a decree for plaintiff, defendant First Na-
tional Bank of Pampa, Texas, appeals. Affirmed.

On liability of directors of national bank for loans in excess
of one-tenth of capital stock of bank, see annotation in 55 L. R.
A. 758.

*Paul H. Kelley* and *Heap & Butler* (*Guy W. Selby,* of counsel), for plaintiff.

*Carton, Gault & Parker* and *Trulove & Frazee,* for defendant bank.

POTTER, J. Plaintiff, a widow about 70 years of age, filed the bill of complaint to set aside, for fraud and want of consideration, a real estate mortgage on valuable real estate owned by her in the city of Flint, dated June 1, 1927, for $50,000, and to quiet title to the lands. From a decree for plaintiff, defendant First National Bank of Pampa, Texas, appeals.

There is no dispute that defendant Bridges obtained by fraud and deceit from plaintiff, without consideration, the real estate mortgage in question purporting to be collateral to plaintiff's promissory note to Bridges as payee in like amount and of even date with the mortgage. Plaintiff's note was in form as follows:

"$50,000.00          FLINT, MICHIGAN, June 1, 1927.
"On or before one year after date, for value received, I promise to pay to C. W. Bridges, Sr., or order fifty thousand and no/100 dollars with interest at six per cent. per annum. Interest payable annually on all sums due and to come due. This note is secured by a real estate mortgage bearing even date herewith.
(Signed)     "JULIA E. NEWALL."

After the defendant Bridges obtained the note and the real estate mortgage collateral thereto, he obtained from the Union Title & Guaranty Company of Detroit, Michigan, title insurance guaranteeing the title of Julia E. Newall to the real estate in question. Subsequently defendant Bridges obtained from plaintiff what is called an "Owner's Offset Statement," which statement purports to be given

to the First Mortgage Corporation of Los Angeles, California, and contains the statement:

· "I hereby certify that I am the owner of the property covered by a mortgage recorded in book 295, pages 566–567 of official records of Genesee county, State of Michigan, and covering a part of block 46 of the village of Grand Traverse, according to the recorded plat thereof."

That part of block 46 of the village of Grand Traverse mortgaged is, according to the mortgage, now a part of the city of Flint. Such village was not incorporated, but has been recognized by law. Act No. 51, Laws of 1838.

By assignment March 26, 1928, defendant Bridges purports to have assigned to defendant bank, for a valuable consideration, the mortgage executed by plaintiff, "recorded June· 1, 1927, in liber 295 of mortgages, pages 566–567 of official mortgage records, in the office of the recorder of city of Flint, county of Genesee, State of Michigan. With the note secured thereby."

The offset statement presented to defendant bank by Bridges referred to the mortgage assigned to it, though the offset statement recited it was recorded in book 295 of the official records of Genesee county, and the assignment to the bank by Bridges recited it was recorded in liber 295 of official mortgage records in the office of the recorder of city of Flint, which was not true.

At the time defendant Bridges made the assignment in question he wanted to borrow from defendant bank $20,000. The bank officers told him it could not let him have that much, but later told him the bank would loan him something like $15,000. On March 26, 1928, the bank's officers agreed with defendant Bridges to loan as much as $15,000, and it is

claimed the bank advanced to him on his promissory note dated March 26, 1928, the sum of $6,600. The next note was executed May 17, 1928, for $4,500. The next note is dated June 1, 1928, for $3,900, and the fourth note is for $250, dated June 26, 1928.

After the bank had accepted this assignment from the defendant Bridges, it wrote to the First National Bank of Flint, Michigan, a letter, a copy of which is as follows:

"First National Bank.
"Capital $60,000.
"Surplus $25,000.
                            "PAMPA, TEXAS,
                                "April 23, 1928.
"FIRST NATIONAL BANK,
    "Flint, Mich.
"*Gentlemen:*
    "A customer of ours holds a note given by Julia E. Newall for $50,000 due and payable June 1, 1928. This note is secured by a mortgage on block 46, village of Grand Traverse, described by metes and bounds, also known as number 701 North Saginaw street, city of Flint. We are interested in knowing if the note is a good note, well secured, and will be paid at maturity. Your early reply will be greatly appreciated. In the meantime we are,
                        "Yours truly,
                        (Signed) "B. F. FINLEY,
                                "President."

And received a reply as follows:

"The First National Bank at Flint.
                "April Twenty-seventh, 1928.
"FIRST NATIONAL BANK,
    "Pampa, Texas.
"*Gentlemen:*
    "Replying to your letter of April 23rd in which you refer to a note given by Julia E. Newall for

$50,000, secured by a mortgage on a piece of property in Flint known as 701 North Saginaw street.

"This property is worth around $35,000 or $40,000. The note, we are informed by parties who seem to be familiar with the transaction, will not be paid at maturity, and we are further informed that there is the element of fraud connected with this transaction.

"Very truly yours,
(Signed) "C. F. Spaeth,
CFS:Y                         "Vice-President."

It is conceded by the briefs of counsel that defendant bank is not a *bona fide* holder for value, without notice, of the mortgage and note of plaintiff so far as their assignment relates to the note of $3,900 and the note of $250. At the time defendant bank made these loans it had received from the First National Bank of Flint, Michigan, the letter above quoted. The controversy relates to the $4,500 note and the $6,600 note. It is conceded that after the $4,500 note given by defendant Bridges to the bank was due, it was assigned by the bank to Mr. Vicars, its vice-president, who paid the bank in full for it; that Vicars, at the time he bought the note from the bank, had full knowledge of the correspondence with the First National Bank of Flint, Michigan, and that after this suit was brought, Vicars erased the indorsement of the bank to him made without recourse, and retransferred the note to the bank, which paid him in full therefor, and the suit is being defended so far as this note is concerned by the bank. The plaintiff claims that inasmuch as the bank now holds this note by assignment after it became due with notice of the infirmity inherent in the $50,000 note and mortgage held by the bank as collateral security, that such note may not be enforced against the plaintiff. As we understand the rule,

where a note and mortgage like that in question are procured by fraud of the payee, and such instruments are subsequently assigned to an innocent holder for value, the written instruments are segregated from the fraud of the payee and the innocent holder thereof holds such instruments shorn of the payee's fraud, and thereafter such instruments may be sold and transferred without regard to the fraud by which they were procured, subject to the exception that if they finally arrive by successive transfers in the hands of the original payee and he institutes suit thereon, the maker may defend though they have been through the hands of innocent purchasers for value.

"It is perfectly true as a general rule, that the *bona fide* holder of negotiable paper has a right to sell the same, with all the rights and equities attaching to it in his own hands, to whoever may see fit to buy of him, whether such purchaser was aware of the original infirmity or not. Without this right he would not have the full protection which the law merchant designs to afford him, and negotiable paper would cease to be a safe and reliable medium for the exchanges of commerce. For, if one can stop the negotiability of paper against which there is no defense, by giving notice that a defense once existed while it was held by another, it is obvious that an important element in its value is at once taken away." *Kost* v. *Bender,* 25 Mich. 515.

We think the bank stands in the same position as to the $4,500 note it does in relation to the $6,600 note.

The defendant bank is a national bank organized under the national banking law and a member of the Federal reserve system. It is claimed by plaintiff the bank is not a *bona fide* holder for value of plaintiff's note and mortgage. She claims that at the

time defendant Bridges arranged for the loan from defendant bank for $15,000, the loan was in violation of the national banking law because such loan was in excess of 10 per cent. of the combined capital and surplus of the bank. The capital of defendant bank was $50,000 and its surplus $25,000. The maximum amount which the bank might loan to one person, under the national banking law, if plaintiff's position is correct, is $7,500, and it is claimed the arrangement was for a loan by the bank to Bridges of $15,000, which seems to be conceded, though it then loaned but $6,600 to him.

"The total obligations to any national banking association of any person, copartnership, association, or corporation shall at no time exceed 10 per centum of the amount of the capital stock of such association actually paid in and unimpaired and 10 per centum of its unimpaired surplus fund." 12 USCA, § 84.

The defendant bank as a member of the Federal reserve banking system, is under the statute governing loans on real estate by national banks members of the Federal reserve system, which provides:

"Any national banking association may make loans secured by first lien upon improved real estate, including improved farm land, situated within its Federal reserve district or within a radius of one hundred miles of the place in which such bank is located, irrespective of district lines. * * * The amount of any such loan shall not exceed 50 per centum of the actual value of the real estate offered for security." 12 USCA, § 371.

It is conceded that $15,000 was an amount in excess of 10 per cent. of the combined capital and surplus of the defendant bank. It is conceded this loan on real estate made by an assignment by the

defendant Bridges to the defendant bank of the
mortgage and note was outside the Federal reserve
district in which the defendant bank was situated,
and not within a radius of 100 miles of the location
of the bank. It is conceded by the defendant bank
it made no investigation of the value of the real
estate mortgaged, whether this mortgage was for
more or less than 50 per cent. of the value of the
mortgaged premises, and it is claimed by plaintiff
the assignment of the note and mortgage by defend-
ant Bridges to defendant bank and all loans made
by the bank subsequent thereto were made in vio-
lation of the banking laws of the United States ap-
plicable to defendant bank.

Attention is called to the fact that the mortgage
is described in the defendant bank's assignment
from Bridges as being recorded in the office of the
recorder of the city of Flint, whereas real estate
mortgages are not so recorded.

In this case, it being conceded defendant Bridges
was not a *bona fide* holder for value but a fraudulent
payee of the note and mortgage, defendant bank, as
assignee thereof, has the burden of proof showing
that it is a *bona fide* holder for value. Its officers
claim defendant bank is a *bona fide* holder for value
of plaintiff's note and mortgage which it voluntarily
acquired from Bridges, the fraudulent payee therein.

Mr. Finley was president of defendant First Na-
tional Bank of Pampa and Mr. Vicars vice-presi-
dent. Finley had been acquainted with defendant
Bridges for several years. The bank had discounted
notes for Bridges. Finley knew Bridges was a pro-
moter of the sale of oil leases. When Bridges pre-
sented his financial statement to defendant bank as
the basis of borrowing money, no investigation of
the value of the property claimed to be owned by

him was made, though it was usual to make such investigation. Neither defendant bank nor its officers Finley and Vicars had any idea of the value of the property mortgaged by plaintiff. They had never seen it, neither they nor the bank knew anything of the improvements thereon, the consideration paid by Bridges for the mortgage nor anything of plaintiff nor of her financial responsibility. Neither the bank nor its officers knew anything of the value of the property in Detroit claimed to be mortgaged to Bridges for $20,000, nor of the value of the $20,000 mortgage held by him, the improvements upon that property, nor the condition of the title thereof, nor of the value of the 500 shares of Guardian Investment Company stock listed by Bridges in his financial statement. Neither the defendant bank nor its officers claimed to know anything of Bridges' financial standing nor his social standing in the community where he lived nor what business he had been engaged in other than the oil lease promotion sale business. It made no investigation of the title of the real estate mortgaged by plaintiff or of prior incumbrances thereon. It had no abstract of title. It made no search of the records for prior conveyances or incumbrances. The proposed transaction was not referred to the attorneys for defendant bank. Its officers knew nothing of the city of Flint and had never been there. The letter to the defendant First National Bank of Pampa from the First National Bank at Flint challenging its attention to the fraudulent character of the mortgage in question was not shown by defendant's officers to its discount committee. Plaintiff's note and mortgage were not called to the attention of the discount committee of defendant bank or to the attention of its board of directors. When

Bridges' paper was not paid'when due, the paper was transferred to Vicars, vice-president, without the knowledge of the discount committee of defendant bank and without knowledge of its board of directors, and apparently the note and mortgage were subsequently reacquired by the bank without knowledge or notice of its directorate. The trial court seemed in doubt as to whether the transaction claimed by defendant bank was a personal speculation of its president and vice-president or a transaction of the bank. We cannot, under the facts, hold defendant First National Bank of Pampa has sustained the burden of proof that it is a *bona fide* holder for value of the note and mortgage of plaintiff which were concededly fraudulent in their inception. The decree of the trial court is affirmed, with costs.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, SHARPE, NORTH, and FEAD, JJ., concurred.