NATIONAL BANK OF COMMERCE v. B. W. MARR & CO.

BILLS AND NOTES—HOLDER IN DUE COURSE.

In action by bank as purchaser of promissory note obtained by payee by fraud, judgment for plaintiff, on ground that it was holder in due course, is affirmed, on appeal, by equally divided court.

Error to Wayne; Sprague (Victor D.), J., presiding. Submitted April 14, 1931. (Docket No. 84,

Calendar No. 35,260.)    Decided June 1, 1931.    Submitted on rehearing October 5, 1931.    Decided April 4, 1932.

Assumpsit by National Bank of Commerce of Detroit against B. W. Marr & Company, a corporation, Asa L. Hill, and P. E. Vandermade on a promissory note. Judgment for plaintiff. Defendant Hill brings error. Reversed, and new trial ordered on first hearing (254 Mich. 333). Affirmed by an equally divided court on rehearing.

*David I. Hubar* (*Milton M. Maddin,* of counsel), for plaintiff.

*Bratton & Bratton,* for defendant Hill.

## ON REHEARING.

SHARPE, J. (*for affirmance*).    The trial court found, and I agree with his finding, that there was ''fraud in the making of the note, the fraud being on the part of B. W. Marr & Company and to the injury of A. L. Hill, the defendant.'' The burden was then cast on the plaintiff to prove that it was a holder in due course. To do so, it must have shown ''That he took it in good faith and for value * * * that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.'' 2 Comp. Laws 1929, § 9301.

The facts, as I gather them from the record, are as follows: B. W. Marr & Company was organized as a corporation in April, 1926, for the purpose of engaging—

''in the general business of real estate, buying and selling, leasing and sub-leasing property, syndicating and subdividing, engaging in property manage-

ment, rentals, contracts, mortgages, interest and equities, and acting in the capacity of a holding company."

The note sued upon was given on December 11th of that year, and purchased by 'the plaintiff four days later. The articles of association disclose that 495 shares of its capital stock were allotted to B. W. Marr, 2 shares to Vincent Dacey, ánd the remaining 3 shares to James S. Novy. P. E. Vandermade was an insurance agent. He testified that Marr told him he was forming a hotel company, and wanted life insurance to divert it to that company. "He told me that the insurance would be turned over to the hotel company." He agreed to take the insurance in the company represented by Vandermade if he (Vandermade) could get the money on Hill's note. Vandermade took the defendant's $2,500 note, indorsed "B. W. Marr & Co. (Sgd.) by B. W. Marr, Pres.," indorsed it himself, and secured its discount at the plaintiff bank, used $404 in payment of the insurance, and gave Marr his check for $2,096, payable to B. W. Marr & Company, which Marr indorsed as he had the note and deposited it to the credit of B. W. Marr & Company in the People's Wayne County Bank, in which it kept its account.

Harry S. Covington, an officer in the plaintiff bank, testified that when Vandermade produced the note for discount he asked him, "What are you doing with B. W. Marr & Company's note?" and that Vandermade answered, "I am selling him insurance," and that he knew when he discounted it that Vandermade "was writing insurance for B. W. Marr & Co."

The defendant Hill testified that the note in question and other notes, totaling $17,500, were given by him to Marr & Company to secure to him a one-

half interest in certain real estate to be purchased by the company and developed and subdivided. It appears that the other notes were turned over to the man from whom the land was to be purchased. They were afterwards returned to the defendant. It is apparent that defendant knew that his notes were likely to be negotiated by Marr & Company.

Under these facts, which in my opinion are established by the weight of the evidence, the trial court was warranted in concluding as a matter of law that the plaintiff was a *bona fide* holder in due course for value. B. W. Marr & Company is not here insisting that the note was indorsed by its president without authority. It could not well do so without returning to Vandermade the $2,096 which was deposited to its credit out of the proceeds thereof. It was what is frequently referred to as a "one-man corporation." The general rule that a president of a corporation has no authority to bind it by such an indorsement should not, in my opinion, be here applied. In *Gould* v. *W. J. Gould & Co.,* 134 Mich. 515 (104 Am. St. Rep. 624, 2 Ann. Cas. 519), cited in our former opinion in its support, it was said:

"It is true that the authority to transact business of this character may be implied where it is shown either that the president has been held out as having charge of the business, and as authorized to perform such an act on behalf of the corporation as that in question, or where the corporation is shown to have received and retained the benefits of the transaction."

In *Ceeder* v. *H. M. Loud & Sons Lumber Co.,* 86 Mich. 541 (24 Am. St. Rep. 134), it was held (syllabus):

"The president of a manufacturing company, who is in the active conduct and management of its busi-

ness, must be presumed to have all the powers of any agent exercising like control or management, and to have authority to do what is usually and ordinarily done by such agents or managers."

See, also, *Sarmiento* v. *Davis Boat & Oar Co.,* 105 Mich. 300 (55 Am. St. Rep. 446).

Had the plaintiff taken this note, indorsed as it was, in payment of his individual debt to it, or permitted him to deposit the proceeds thereof to his own credit in the bank, a different question would be presented. In speaking of the degree of care which a purchaser of negotiable paper must exercise, Mr. Justice Stone, speaking for the court in *Hakes* v. *Thayer,* 165 Mich. 476, 488, said:

"It was at one time held that circumstances which ought to excite the suspicions of a prudent and careful man constituted notice and put the purchaser upon inquiry. This rule has been abandoned, and it is the almost universal rule now that neither suspicions, nor even gross negligence on the part of a taker will affect his right, unless the suspicions or circumstances amount to bad faith. Suspicions or even knowledge of facts which will fall short of bad faith do not amount to notice."

Having in mind the nature of the business in which the corporation was engaged, the personal interest of Marr therein, the purpose he had as president in indorsing the note, the information relative thereto communicated to plaintiff's official at the time of its purchase, and the use to which the proceeds of the note were put, in my opinion it should be here held that the plaintiff was a holder thereof in good faith for value and entitled to recover from the defendant.

The judgment is affirmed.

Clark, C. J., and North and Butzel, JJ., concurred with Sharpe, J.

POTTER, J. (*for reversal*). This case submitted at the April, 1931, term, opinion in which is reported (254 Mich. 333), is before us on rehearing. There was judgment for plaintiff in the court below against all defendants. Defendant Hill alone appealed. As to him the judgment was reversed. B. W. Marr, president of B. W. Marr & Company, a corporation, was a real estate speculator, dealing in pretended real estate holdings near Detroit. He procured Hill's notes for $17,500 by fraud. But one note of $2,500, signed by Hill, is before us; a copy of it is set up in the opinion above referred to. This note was given by Hill to B. W. Marr & Company. Defendant Vandermade was an insurance agent. He wanted to sell Marr life insurance. Marr agreed with Vandermade to buy life insurance and pay a premium thereon if Vandermade would take in payment the $2,500 note of Hill, given to B. W. Marr & Company, a corporation. Vandermade went to plaintiff bank and told its officers he could sell the insurance to Marr if the bank would cash Hill's note, and give Vandermade the amount of the premium on the insurance policy on Marr's life and deliver back to Vandermade a check for $2,096 payable to B. W. Marr & Company. With full knowledge disclosed to it by Vandermade that a part of the proceeds of the sale of the note of B. W. Marr & Company, a corporation, was to be used by B. W. Marr to pay his individual obligation, plaintiff accepted the note of the corporation indorsed by Marr, paid Vandermade his insurance premium, and delivered to him a check for the balance of $2,096 payable to B. W. Marr & Company. The president of B. W. Marr & Company had no implied authority to indorse its commercial paper. He had no presumptive right to convert the company's assets to his own use and benefit in payment of his per-

sonal obligation. The testimony shows he had no actual authority to do so. B. W. Marr & Company is not here defending on the ground of Marr's lack of authority to indorse. The question here involved is whether plaintiff is a *bona fide* holder of defendant Hill's note in due course. No one is a holder in due course who takes a note belonging to a corporation with actual knowledge its proceeds are to be used to pay the individual debt of a member thereof without inquiry to ascertain the extent of the indorser's authority to transfer the note and convert the proceeds to his own use. Where the note was originally procured by fraud, the burden of proof is upon the holder thereof to show it is a *bona fide* holder for value. *Newall* v. *Bridges*, 251 Mich. 384.

A similar question was involved in *McIntosh* v. *Detroit Savings Bank*, 247 Mich. 10, 15–17, where it was said:

"When Cranston, having possession of valid checks of third persons belonging to the partnership, and payable to it, indorsed those checks in the partnership name per J. H. Cranston, and deposited them or the proceeds thereof to the credit of his own account in his own name in defendant bank, it, from the face of such checks themselves, not only had notice but knowledge of the ownership thereof and of their proceeds and of Cranston's misappropriation of such partnership funds. * * * It knew Cranston was, *prima facie*, committing a fraud upon his partner, * * * and neither the transfer nor the indorsement were binding on the firm without actual authority or ratification."

In *Jones* v. *Turner*, 249 Mich. 403, it was said:

"One who accepts company property in payment of the individual indebtedness of a member of the company knows that *prima facie* the individual so

disposing of the company property is perpetrating a fraud upon the company, and the creditor who accepts company property on the indorsement of the company made by an individual in payment of his individual debt will be deemed to have acted in bad faith and in fraud of the company.''

A substantially similar holding was made in *Wagner Trading Co.* v. *Battery Park Nat. Bank,* 228 N. Y. 37 (126 N. E. 347, 9 A. L. R. 340), where it was said:

''When it accepted the checks payable to the plaintiff and indorsed by Wagner as president of the plaintiff for deposit to the account of Wagner himself, it did so at its peril to ascertain whether Wagner had authority to indorse them and by his indorsement transfer the money to be paid thereon to his personal account.''

Upon reconsideration of this case I see no reason why the conclusion arrived at when it was first disposed of by this court should not be adhered to. Judgment should be reversed, with costs; new trial should be granted.

McDonald, Fead, and Wiest, JJ., concurred with Potter, J.