## HALL v. MANUFACTURERS TRUST CO.

District Court, S. D. New York.
Feb. 2, 1937.

Gibboney, O'Brien & Hayes, of New York City (James V. Hayes and Stuart G. Gibboney, both of New York City, of counsel), for plaintiff.

Newman & Bisco, of New York City (Leonard G. Bisco, Milton E. Lynn, and Jacob Wahrhaftig, all of New York City, of counsel), for defendant.

ABRUZZO, District Judge.

On March 1, 1928, the defendant, Manufacturers Trust Company, sold to Clyde H. DeWitt certain securities (par. 11) for which DeWitt delivered to defendant (par. 24) his personal check to the order of the defendant in the sum of $35,000. It was drawn upon and certified by the plaintiff, the Germantown National Bank. This was before the Germantown National Bank was taken over by Herbert Hall, as receiver. The defendant was unwilling to make immediate delivery of the securities bought by DeWitt due to the fact that the defendant wanted payment in New York City funds, concurrent with the delivery of the securities.

Plaintiff bank was an out-of-town bank in Columbia County, N. Y. There was $35,000 to the credit of the plaintiff with the Federal Reserve Bank of New York (par. 2) which was transferred to the credit of the defendant for the use of the plaintiff (pars. 15, 18, 19, 20).

Upon the transfer of this money, the securities were delivered to DeWitt personally (par. 24) and the transaction was completed and closed at that time.

The plaintiff seeks to recall and reclaim this payment.

In the stipulation of facts, paragraph seventeenth provides as follows:

"That said credit was transferred on the books of the Federal Reserve Bank of New York pursuant to a written instruction delivered to it on the 1st day of March, 1928, signed by Clyde H. DeWitt, which reads as follows:

" 'Federal Reserve Bank
" 'New York City, N. Y.
" 'Gentlemen:
" 'Please charge our reserve account $35,000 and credit the Manufacturers Trust Co. New York City for our use.
" 'Yours very truly,
" 'Germantown National Bank,
Germantown N. Y.
" '[Signed]   Clyde H. DeWitt
" 'Vice Pres.' "

Paragraph eighteenth reads as follows:

"That a receipt for such credit was given by Manufacturers Trust Company to the Federal Reserve Bank of New York on March 1st, 1928, which receipt reads as follows:

" 'Receipt
" 'Telegraphic Transfer of Funds
" 'New York NY
" 'Manufacturers Trust Co.
" 'Mar. 1/28
" '$35,000.#
" 'Received from Federal Reserve Bank of New York.
" 'By order of Germantown National Bank Germantown NY
" 'For use of same
" 'As instructed in their letter of 3/1
" '[Signed]   Manufacturers Trust Co.
" 'By      C. L. Lewis.' "

It will thus be seen that paragraph eighteenth provides that the money received by the defendant from the Federal Reserve Bank of New York was for the use of the Germantown National Bank. Yet, in spite of that fact, the securities were delivered to DeWitt.

DeWitt was a stockholder, director, and sole vice president of the Germantown National Bank, the plaintiff herein. He had very little money on deposit in the plaintiff bank which is conceded and the $35,000 transferred from the Federal Reserve Bank of New York were funds belonging to the plaintiff bank. This money was used by DeWitt to pay his own personal obligation for the purchase of the aforesaid securities from the defendant. The defendant knew that the purchase of the securities by DeWitt was for his own account; but, of course, at that time they did not know that the transfer of the $35,000 from the Federal Reserve Bank of New York was not DeWitt's.

The plaintiff contends that the defendant was put on notice and should have been on its guard as to whether the money

so transferred was DeWitt's or the plaintiff's; for, if it were the plaintiff's then DeWitt had no right to make the transfer. The plaintiff contends that the defendant should not have consummated the transaction because on its face it looked suspicious and any slight investigation would have shown the facts as they actually existed.

The plaintiff bank further claims that in view of the fact that the bank's money was used, without apparent authority, to pay DeWitt's personal obligation, this money can be recalled and reclaimed by them and a judgment should be rendered in its favor.

The eighteenth concession of fact, which is the receipt by the Manufacturers Trust Company, states that the $35,000 was *for the use of the Germantown National Bank.* If we were to stop at this point, unquestionably the court would be compelled to grant a judgment in favor of the plaintiff and against the defendant under the authority of Lamson v. Beard, 94 F. 30, 45 L.R.A. 822 (C.C.A.7th Cir.), and Wagner Trading Co. v. Battery Park National Bank, 228 N.Y. 37, 126 N.E. 347, 9 A. L.R. 340. The contention of the defendant that the transfer of the funds was made innocently by them in the belief that DeWitt had arranged to make payment to the Germantown National Bank is untenable under the theory of the cases as cited above. The transaction before the court, however, goes further.

The thirty-fifth concession of facts indicates that the balance in the personal account of DeWitt in the Germantown National Bank on March 1, 1928 was $376.83. Surely, this was not sufficient to repay the plaintiff for the $35,000 transferred by the Federal Reserve Bank of New York.

The stipulation of facts further provides as follows:

"Thirty-ninth: That on March 5, 1928, said Clyde H. DeWitt discounted at the First Trust Company of Albany, New York, a three months note made by E. R. DeWitt & Son, of which said Clyde H. DeWitt was a general partner, and indorsed by E. R. DeWitt and Clyde H. DeWitt in the sum of Twenty-five Thousand ($25,000.) Dollars, and thereafter and on March 6, 1928, deposited the proceeds thereof in the sum of Twenty-four Thousand six hundred sixteen and 67/100 ($24,616.67) Dollars, in his said personal account at the Germantown National Bank."

"Fortieth: That on March 8, 1928, the said Clyde H. DeWitt borrowed from the Hudson River Trust Company the sum of Twenty Thousand ($20,000.) Dollars upon his promissory note indorsed by his father, E. R. DeWitt and deposited the proceeds thereof in his said personal account at The Germantown National Bank."

"Forty-first: That on March 5, 1928, and March 8, 1928, said Clyde H. DeWitt delivered to said J. Raymond Dubois, the said Cashier of The Germantown National Bank, his checks drawn on his personal account and payable to the order of The Germantown National Bank in the sum of Twenty-four Thousand ($24,000.) Dollars and Eleven Thousand ($11,000.) Dollars respectively."

On March 5, 1928, or four days after the transfer of the $35,000 from the Federal Reserve Bank of New York to the Manufacturers Trust Company, it is found that DeWitt's checks drawn on his personal account in the sums of $24,000 and $11,000 respectively were made payable to the Germantown National Bank and found their way into the Germantown National Bank and to its credit. The plaintiff, at this point, had been made whole and sound for the $35,000 illegally transferred from the Federal Reserve Bank of New York to the defendant on March 1, 1928, and the defendant claims this constitutes payment and discharged the defendant from any liability it might have owed the plaintiff.

If we were to stop here, in view of all that has transpired, judgment would of necessity have to be granted in favor of the defendant on the basis of the situation that existed at this point which is not controverted and which is practically conceded. Nevertheless, the plaintiff claims that in the light of what happened after March 5, 1928, liability attaches to the defendant.

DeWitt was guilty of subsequent conversions. He was treasurer of the county of Columbia, state of New York, and the general fund account of that county was with the plaintiff. Between June 5, 1928, and July 7, 1928, DeWitt converted to his own use $30,398.01 from the county's general fund with the plaintiff (pars. 46–50). By October 20, 1930, these conversions totalled $87,000, of which this sum of $30,398.01 was the first

item. These conversions were known to Du Bois, the plaintiff's cashier.

The plaintiff in its brief (p. 20) states as follows: "If it be held by the Court that the delivery of checks by DeWitt on March 8th constituted payment to The Germantown National Bank, then the plaintiff cannot be successful unless the subsequent withdrawals by DeWitt can be attributed to the defendant."

The plaintiff claims that DeWitt's diversion of the original $35,000 was the intervening cause of the loss to the Germantown National Bank and that the principles of legal causality prevail, citing from the American Law Institute's Re-Statement of the Law of Torts which appear in volume 2 under the following sections and pages:

Section 431, page 1159: "The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm."

Section 435, page 1173: "If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable."

Section 439, page 1184: "If the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's innocent, tortious or criminal act is also a substantial factor in bringing about the harm does not protect the actor from liability."

Section 447, page 1196: "The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

"(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

"(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

"(c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

Section 448, page 1199: "The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct should have realized the likelihood that such a situation might be created thereby and that a third person might avail himself of the opportunity to commit such a tort or crime."

Section 449, page 1202: "If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby."

Plaintiff seeks to charge the defendant as a wrongdoer and with all the consequences of the original wrong even though it did not and could not foresee these consequences. Plaintiff further claims that the defendant knew DeWitt was using bank funds and was put upon notice that DeWitt, and possibly others acting with him, might juggle the books to cover his diversion and at some time might make some attempt to make restitution.

The natural question to arise at this point is whether or not the defendant could foresee that DeWitt would juggle the Columbia county account, for nowhere in the record is there any proof that the defendant knew that DeWitt was the treasurer of Columbia county and could draw on the general fund or that Columbia county had an account in the plaintiff bank.

In June, 1928, it was the Columbia county account that was pilfered, not the plaintiff's, and it is difficult to find how the defendant can be called upon to answer to the plaintiff for the dishonesty of DeWitt and its own cashier, J. Raymond Du Bois.

The president and directors of the plaintiff bank were very lax and careless in not discovering the actions of DeWitt and Du Bois. Even this conduct of the president and directors does not control

the issue here entirely, but it is difficult to understand how such a condition existed without their knowledge. The court cannot find the defendant responsible for the subsequent acts of DeWitt in June, 1928. In Kissam v. Anderson, 145 U.S. 435, 12 S.Ct. 960, 36 L.Ed. 765, it is stated that where property has been converted and has been restored to and accepted by the lawful owner, a subsequent conversion gives rise to a new and independent wrong. In the case cited, the action was instituted by a receiver of a national bank against a firm of stockbrokers to recover money wrongfully withdrawn from the bank by the cashier for personal speculations. The money was returned to the bank's correspondent from whom it received the amount converted. The cashier thereupon checked out the money thus returned for his personal use. At 145 U.S. 435, 12 S. Ct. 960, 962, 36 L.Ed. 765, 768, the court stated: "If it be said that no officer of the Albion Bank knew of these deposits except Warner, the wrongdoer, and that he *subsequently* drew out most of these moneys in drafts to further other wrongs, the reply is that the other officers and directors of the Albion Bank were chargeable with knowledge of these deposits. If, through their negligence, they did not in fact know, that is a matter for which the Albion Bank, and not the defendants, were responsible. Kissam, Whitney & Co. had no supervision over its affairs,—no knowledge as to how those affairs were managed. * * * The learned circuit judge seemed to be of the opinion that, as they had assisted Warner in withdrawing these funds from the bank, they could not escape responsibility, unless the sum total of his defalcations was reduced by their deposits to an amount less than that received from him. * * * *But surely they cannot be held for his subsequent wrongdoing. If they have returned a part of that they assisted him in wrongfully withdrawing, they are pro tanto relieved from responsibility, and are not to be chargeable with his after misconduct, in respect to which they had no part.* It will not do to say that they put the money where he could check it out, and therefore are responsible for what he did with it. They deposited it to the credit of the Albion Bank, and it was for the officers and directors of that bank to take care of its deposits." (Italics the court's.)

It would seem that the case at bar comes squarely within Kissam v. Anderson, supra. Therefore, judgment should accordingly be granted in favor of the defendant.