FEDERAL SERVICES FINANCE CORP. v.
BISHOP NATIONAL BANK OF HA-
WAII AT HONOLULU.

No. 12678.

United States Court of Appeals
Ninth Circuit.

July 11, 1951.

William W. Saunders, Edward Z. Buck, Honolulu, T. H. (Lewis, Kimball & Buck, Honolulu, T. H., of counsel), for appellant.

J. Russell Cades, H. Baird Kidwell, Honolulu, T. H. (Smith, Wild, Beebe & Cades, Anderson, Wrenn & Jenks all of Honolulu, T. H., of counsel), for appellee.

Before HEALY, BONE and HASTIE,* Circuit Judges.

HASTIE, Circuit Judge.

The Federal Services Finance Corporation, a Delaware corporation and a depositor in the Bishop National Bank of Hawaii, a national banking association, brought this action against the Bank in the District Court for the Territory of Hawaii to recover the amount of twelve checks which the plaintiff had drawn on the Bank payable to the order of the Waipahu Auto Exchange, Limited. Nine of these checks were cashed at the defendant bank by one Anthony Yee, the president of the Waipahu Auto Exchange, Limited. Yee cashed the other three at the Bank of Hawaii, and the amounts thereof were subsequently deducted by defendant bank from plaintiff's account. Each check was endorsed "Waipahu Auto Exchange, Limited by Anthony Yee, President".

Plaintiff's complaint sounds in contract and alleges that "None of said checks was paid by said defendant according to the terms of said checks, to wit: to said payee named therein or to the order of said payee", and further that "On or about the respective dates of said checks, upon presentation thereof for payment, defendant wrongfully cancelled each said check and

* Third Circuit, sitting by special designation.

wrongfully deducted and withdrew from plaintiff's said account in the defendant's said bank, a sum equal to the full amount of each said check and charged its account with each such amount".

Hearing was had without a jury. On defendant's motion, after presentation of the plaintiff's evidence, the court dismissed the complaint. Findings of fact and conclusions of law were entered in accordance with Fed.Rules Civ.Proc. rule 52(a), 28 U.S.C.A. The court found as a fact that the defendant cashed and cancelled the checks in suit and charged the amounts thereof to the account of the plaintiff upon their presentation for payment by Anthony Yee.

The court also found (1) that Yee was vested with "prima facie" authority inherent as a matter of law in his office as president, (2) that the record established his apparent authority to cash checks, (3) that implied authority appeared as well and (4) that plaintiff had failed to prove that Yee acted beyond his actual authority. These bases of decision will be examined separately.[1]

■ We find it a sound rule of law supported by the weight of authority that the president of an ordinary trading corporation, such as this business was, is not presumed to have power solely by virtue of his office to cash checks payable to the corporation's order. Singer Sewing Machine Co. v. Citizens' National Bank, 1933, 111 N.J.L. 199, 168 A. 32; Dennis Metal Mfg. Co. v. Fidelity Union Trust Co., 1924, 99 N.J.L. 365, 123 A. 614; L. W. Cox & Co., Inc. v. Chemical Bank & Trust Co., 1941, 175 Misc. 1063, 26 N.Y.S.2d 38; Wagner Trading Co. v. Battery Park National Bank, 1920, 228 N.Y. 37, 126 N.E. 347, 9 A. L.R. 340. Cf. Brady on Bank Checks, 2d ed. § 169.

■ This rule is but a legal recognition of familiar business practice. Normally, the president is not the fiscal officer of a business corporation. Ordinarily, checks payable to the order of a corporation are deposited in a bank to its credit. Ordinarily, cash required in the regular course of business is obtained by drawing upon the corporation's own bank account. Ordinarily, if occasion arises to cash a check payable to a corporation, this is accomplished on the endorsement of a formally designated fiscal officer. If not mandatory, all of these practices are sufficiently familiar and customary to afford reasonable basis for judicial refusal to attach to the office of president of an ordinary business corporation any such legal implication of power as is here claimed. It follows that the judgment can not stand on the circumstance that the president of the corporation cashed the checks in question.

■ On the present record, Yee's lack of apparent authority to cash these checks is clear. Beyond the fact of Yee's office, there is no evidence that any representation which emanated from the corporation or from the plaintiff or for which either of them was responsible caused the bank to accept Yee's endorsement or to cash the checks at his request. Whether defendant could have made such a showing of reliance we can not know since defendant was not required to offer any defense. We decide only that without such proof apparent authority is not established. Restatement, Agency § 27 (1933); McNutt Oil & Refining Co. v. Mimbres Valley Bank, 10 Cir. 1949, 174 F.2d 311; Quint v. O'Connell, 1915, 89 Conn. 353, 94 A. 288. This basis of judgment also fails.

We come now to the remaining conclusions both of which involve the principal question in this case, that of actual authority, express or implied. Defendant takes the position that cross examination of corporate officers who appeared as witnesses for the plaintiff revealed so loose a method of conducting the corporation's business and such corporate acquiescence in Yee's acting about as he pleased on corporate matters as to constitute implied authority to cash checks. In this connection, defendant stresses and the district court mentions

1. Recognizing the applicability of Hawaiian law to these issues, able counsel, members of the bar of Hawaii, who argued this appeal, had discovered no controlling Hawaiian decisions. Our own research has been no more revealing.

in its findings that the officers and directors permitted Yee to make "financial arrangements" for the corporation. However, the record shows only that the "financing" of corporate undertakings, meaning the negotiation of necessary credit, was a responsibility delegated to Yee. Obviously, such activity is in a category so different from cashing checks that no significant inference about the one can be drawn from proven practice in the other. Also offsetting defendant's contention in this regard was evidence that the corporation had a general manager who performed functions normally incidental to that office and a treasurer who maintained the only corporate bank account which the record reveals. The parties stipulated that all checks drawn on that account were signed by the treasurer and countersigned by the vice president of the corporation.

We find it unnecessary to decide what conclusion this evidence standing alone would have warranted concerning Yee's authority. For other evidence of substantial probative value was offered in support of plaintiff's contention that Yee lacked actual authority to endorse and cash checks.

Plaintiff attempted to introduce into evidence a document denominated "by-laws" executed by four of the five persons who constituted the entire body of incorporators, original stockholders, directors, and officers of the corporation. There seems no basis for doubt that the fifth member of this group who was identified as the lawyer who drafted and submitted the document also approved it. This offer of proof was objected to on the ground that the procedure prescribed by the Hawaiian statute relating to the adoption of corporate by-laws had not been complied with. This objection was sustained. We hold that it should have been overruled.

■ The offer of the purported by-laws was not made for the purpose of charging the defendant or any third person with notice of limitations upon the president's authority. The offer was made to show as a fact intracorporate agreement and understanding with reference to the authority, duties, and functions of the several corporate officers including the president.[2] All of the persons, including Yee himself, concerned with or responsible for the management of corporate affairs were parties to this agreement. On its face the document set forth the duties and responsibilities of the president and the other officers. In addition, an officer of the corporation testified that the corporation in fact operated under these "by-laws". Thus, the document, although inadmissible for some purposes because of informality attending its adoption, was competent evidence of authority actually given to or withheld from the president.[3] Its provisions were highly significant evidence that Yee was not authorized to cash checks. It should have been admitted and considered along with such other evidence as was presented on the extent of and limitations upon Yee's authority.

We have not overlooked the contention that there was such departure in practice from the operating scheme of the by-laws that their exclusion was immaterial. This argument seems to proceed from the misconception of the significance of Yee's responsibility for "financial arrangements" to which we already have alluded. In all

---

2. "The office of a by-law is to regulate the conduct and define the duties of the members towards the corporation and among themselves." " * * * the term signifies the rules and regulations * * * enacted by the corporation to regulate, govern and control its own actions, affairs and concerns and its stockholders or members and directors and officers with relation thereto and among themselves in their relation to it." Fletcher, Cyclopedia Corporations (1931) § 4166.

3. Corporate by-laws, invalid as such, are not invalid for all purposes. For example, it is well settled that an invalid corporate by-law is enforceable as a contract against one who agrees to be bound by it so long as it is not illegal, ultra vires, or contrary to public policy. Oakland Scavenger Co. v. Gandi, 1942, 51 Cal.App.2d 69, 124 P.2d 143; Krauss v. Kuechler, 1938, 300 Mass. 346, 15 N.E. 2d 207, 117 A.L.R. 1355; Bessette v. St. Albans Co-operative Creamery, Inc., 1935, 107 Vt. 103, 176 A. 307. See Fletcher, Cyclopedia Corporations (1931) § 4194.

the circumstances, the by-laws were material as well as competent. In our view, added to the other evidence, they would have sufficed to establish a prima facie case of action by Yee beyond the scope of his authority. We again emphasize that we can not know and in no way suggest how the case would have appeared if and after the defendant had offered its proof.

For these reasons, the judgment is vacated and the cause remanded to the district court for a new trial or such other proceedings as shall be consistent with this opinion.