BENJAMIN R. KITTREDGE, Respondent, *v.* ARTHUR E. GRANNIS et al., Defendants, and ROBERT C. LAWRENCE, Appellant.

Conversion — alleged unlawful sale by brokers of bonds deposited with them by owner thereof — action to recover value of such bonds from purchaser thereof — burden of proof — attempt by plaintiff to show that purchaser bought such bonds in bad faith — erroneous admission of immaterial evidence — erroneous refusal to charge requests made by defendant.

1. Where the owner of negotiable bonds deposited them with a stock brokerage firm of which he was a customer and the brokers sold the bonds to a third party, it is the presumption as to such third parties, in the absence of any evidence to the contrary, that the brokers, who had possession of the negotiable instruments, were holders in due course and had the right to sell them. (Neg. Inst. Law, § 91.)

2. Plaintiff deposited negotiable bonds with a firm of brokers of which he was a customer, who sold them to another firm of brokers, and after the bankruptcy of the former firm and the death of its partners, he brought this action against a member of the latter firm for the value of the bonds, claiming that the bonds were converted by the brokers with whom he had deposited them; that they were unlawfully sold by them to the firm of which defendant was a member, and that defendant having knowledge of the facts was a purchaser in bad faith and, therefore, liable to him for the conversion of the

bonds by the brokers with whom he had deposited them. (Neg. Inst. Law, § 91.) Plaintiff was obliged to prove the conversion of the bonds by his brokers. The burden was upon him to prove that they had no right to sell them and before the jury could give a verdict for him it was obliged to find, as a fact, that his brokers had received no direction to sell them and had acted contrary to his orders. (Neg. Inst. Law, § 98.) Why plaintiff gave these bonds to his brokers does not appear by any direct evidence. The complaint alleges that the securities were deposited "for safe keeping" to be sold by said brokers "as and when directed so to be sold by the plaintiff," but the receipt of the brokerage firm merely recites that the bonds had been "received from" the plaintiff. Plaintiff has not sued this firm, or, so far as the record shows, made any claim against them, and all of the members of the firm are dead. There is no evidence showing the conversion of the bonds by the firm with whom plaintiff had deposited them and there is no claim that defendant had any knowledge that the bonds were converted by the brokers to whom they were given.

3. An attempt was made to prove defendant's bad faith by evidence showing that the brokers who had the bonds were accustomed to bucket their customers' orders and appropriate to their own use the cash or securities deposited with them and that defendant having, up to three years before the transaction in question, been in the employ of said brokers, as bookkeeper and afterward as manager, confidential man and keeper of secret records which charged him with notice that said brokers systematically misappropriated their customers' securities and were habitual thieves and that the circumstances of the transaction in question were of such a character as to put defendant's firm on notice that these bonds were appropriated to the use of the brokers with whom plaintiff had deposited in the same way as they had appropriated bonds of other customers. This evidence was immaterial unless plaintiff's bonds were converted. If competent to prove defendant's methods of doing business by the persons charged with the conversion, it should have been confined to such matters as came to the knowledge of defendant.

4. Where counsel for defendant presented to the trial judge a number of requests to charge, and when asked to pass upon them said, " I have gone over the requests and I have incorporated (in the charge) everything that is proper to be charged," and defendant's counsel replied: " I except to the refusal to charge each of the requests submitted by defendant," such exception presents for the consideration of the court, upon this appeal, the requests to charge made by defendant's counsel.

5. Where counsel for defendant filed a number of requests asking the judge to charge, in substance and effect, that if the jury were

unable to determine for what purpose plaintiff delivered the bonds to his brokers, or if they were deposited for sale or as a loan to the brokers, then their verdict must be for the defendant, and the court refused to so charge, such refusal was erroneous. (*Read* v. *Nichols,* 118 N. Y. 224; *Newall* v. *Bartlett,* 114 N. Y. 399, 405; *People* v. *Katz,* 209 N. Y. 311, 335, distinguished.)

*Kittredge* v. *Lawrence,* 204 App. Div. 870, reversed.

(Argued June 7, 1923; decided July 13, 1923.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 25, 1923, unanimously affirming a judgment in favor of plaintiff as against defendant, appellant, entered upon a verdict.

*William T. Van Alstyne* and *Royal E. T. Riggs* for appellant. There is no proof of any defect in the right of Coster, Knapp & Co. to dispose of the bonds. (*Murray* v. *Wagner,* 277 Fed. Rep. 32; Code Civ. Pro. § 829; *Levy* v. *Louvre Realty Co.,* 222 N. Y. 14; *Matter of Smith,* 95 N. Y. 516; *Mullins* v. *Chickering,* 110 N. Y. 513; *Byerer* v. *Smith,* 55 App. Div. 405.) The court erred in permitting the jury to speculate as to the purposes for which the securities had been delivered to Coster, Knapp & Co. (*Berney* v. *Drexel,* 33 Hun, 34; *Smith* v. *Smalley,* 19 App. Div. 519; *Hinkle Iron Co.* v. *Cohn,* 184 App. Div. 181; *Salisbury* v. *Segal,* 189 App. Div. 400; *Byrne* v. *Weidenfeld,* 113 App. Div. 451; *Johnson* v. *Blaney,* 198 N. Y. 312; *Newell* v. *Nichols,* 75 N. Y. 78; *Wind* v. *Underwood,* 4 DeG., M. & G. 633; *Douglas* v. *Carpenter,* 17 App. Div. 329; *Strickland* v. *Magoun,* 119 App. Div. 113; 190 N. Y. 545.) The court erred in refusing to instruct the jury as to what constituted good faith. (*Murray* v. *Lardner,* 2 Wall. 121; *Crittenden* v. *Niduwitz,* 272 Fed. Rep. 871; *People* v. *Meadows,* 199 N. Y. 1; *State Bank* v. *United States,* 114 U. S. 401.) The exceptions to the refusals to charge as requested were

sufficient. *McKinley* v. *Met. St. Ry. Co.*, 77 App. Div. 256.)

*R. Randolph Hicks, George F. Canfield* and *Harlan F. Stone* for respondent. The plaintiff proved his right to immediate and actual possession of the securities. (*Mott* v. *Consumers Ice Co.*, 73 N. Y. 543; *Briggs* v. *Weeks*, 98 App. Div. 487; *Cromwell* v. *Hughes*, 33 N. Y. Supp. 643; *Young* v. *Katz*, 48 N. Y. Supp. 187; *Shrady* v. *Shrady*, 58 N. Y. Supp. 546.) An inquiry by Grannis & Lawrence or any investigation by them would have disclosed that the bonds in question were the property of Mr. Kittredge. (*Birdsall* v. *Russell*, 29 N. Y. 220; *M. S. Inst.* v. *N. Y. Nat. Exchange Bank*, 170 N. Y. 67.) The books of Coster, Knapp & Co. were properly admitted. (*Chapman* v. *Erie Ry. Co.*, 55 N. Y. 79; *Merrill* v. *I. & O. R. R. Co.*, 16 Wend. 586; *Bank of Monroe* v. *Culver*, 2 Hill, 531; *Halsey* v. *Sinsebaugh*, 15 N. Y. 485; *Guy* v. *Meade*, 22 N. Y. 462; *Rathbone* v. *Hatch*, 90 App. Div. 151; *Mayor* v. *Second Ave. R. R. Co.*, 102 N. Y. 572; *Wallace* v. *Randall*, 81 N. Y. 164; 2 Wigmore on Evidence, 1421; *Lyon* v. *Ricker*, 141 N. Y. 225; *Smith* v. *Blakey*, L. R. [2 Q. B.] 326; *Framingham Co.* v. *Barnard*, 2 Pick. 532; *Davies* v. *Humphrey*, 6 M. & W. 153.) The court correctly refused the twenty-four charges submitted to it, and, even if the court had erred, no sufficient exception was taken to the action of the court. (*Reed* v. *Nichols*, 118 N. Y. 224; *Benedict* v. *Deshel*, 77 App. Div. 276.)

CRANE, J. By a judgment entered upon a verdict of a jury and unanimously affirmed by the Appellate Division the plaintiff has recovered from the defendant Robert C. Lawrence a large judgment for the conversion of sixty bonds of the New York Central and Hudson River Railroad Company, maturing in the year 1997; twenty-five bonds of the New York Central and Lake Shore,

maturing in 1998, and ten bonds of the Lake Shore and Michigan Southern, maturing in 1997.

The bonds were alleged to have been converted in April of 1908. This action was brought in April, 1914, and tried in December, 1921. The jury returned a verdict for the plaintiff for the full amount of $149,232.37, which included $67,057.87 of interest accruing during the fourteen years between the alleged conversion and the date of the trial.

The appellant by permission of this court has brought up for review certain rulings made upon the trial, which he claims to have been errors, materially affecting his rights.

To fully appreciate the importance of the rulings and the bearing which they may have had upon the result of this case, it will be necessary to briefly review some of the principal facts.

The defendant was a member of the firm of Grannis & Lawrence, carrying on a business of buying and selling stocks and bonds. This firm or its predecessor, Clarke, Grannis & Lawrence, had been doing business in the city of New York since November, 1905. From its inception until April 23, 1908, it had carried on a very large business with the stock brokerage firm of Coster, Knapp & Company. The transactions had been many. On the 23d of April, 1908, Grannis & Lawrence were carrying for Coster, Knapp & Company on margin 22,300 shares of stock, the selling price of which was $1,565,137.90. That these were *bona fide* and legitimate transactions is evidenced by the fact that by May 2d these accounts had been closed out and a balance of $3,069.35 paid to the representative of Coster, Knapp & Company.

Coster, Knapp & Company had been in business as a stock brokerage concern for a great many years. It was a partnership with representation upon the floor of the Stock Exchange, doing a large business of buying and selling stocks and bonds. In 1905 it did about three-fourths of the steel specialist business that was done on

the Stock Exchange. Charles Coster, the senior member of the firm, was a man in good standing, of excellent reputation.

The plaintiff in this case, Benjamin R. Kittredge, was a customer of Coster, Knapp & Company with whom he had transacted business for five years or longer. He was a personal friend of Mr. Coster.

The books of Coster, Knapp & Company indicated as of April 23, 1908, that he owed that firm against the securities purchased for him $60,234.78. The judge in this case so instructed the jury.

There is no denial in this case by the plaintiff of the fact that he paid $10,000 to Coster, Knapp & Company for the purchase of securities, and that he supposed or had reason to suppose that there was a balance due in the amount stated. The plaintiff upon the trial, through his counsel and the accountant who had examined the books, claimed that the brokers had not made legitimate pur-· chases but had bucketed his orders. However this may be, the fact remains beyond dispute that Kittredge was a customer of Coster, Knapp & Company and had pur- chased securities for which he knew or had reason to believe that he owed them $60,234.78 balance.

This being the relationship between these three parties, Benjamin R. Kittredge, the customer, Coster, Knapp & Company, his brokers, and Grannis & Lawrence, with whom Coster, Knapp & Company did business, we now have these additional facts in reference to the bonds in question.

On April 10, 1908, plaintiff delivered to the firm of Coster, Knapp & Company seventy bonds of the New York Central and Hudson River Railroad Company, twenty-five bonds of the New York Central and Lake Shore Collateral, ten bonds of the Lake Shore and Michigan Southern.

Why he gave these bonds to Coster, Knapp & Company does not appear by any direct evidence. The receipt

1923.]        Opinion, per CRANE, J.        [236 N. Y. 375]

of the brokerage firm merely recites that these bonds had been " received from B. R. Kittredge." The complaint alleges that the securities were deposited " for safe keeping to be sold by said Coster, Knapp & Company as and when directed so to be sold by the plaintiff."

The bonds were negotiable instruments payable to bearer, the title passing on delivery. The respondent in his brief in this case states as follows: " The bonds may have been deposited with Coster, Knapp & Company for one of three reasons: 1. They may have been deposited for safe keeping. 2. They may have been deposited for sale by Coster, Knapp & Company. 3. They may have been deposited as margin on a speculative account."

The plaintiff claims in his complaint that they were given to Coster, Knapp & Company to sell when so directed. It can hardly be supposed that the bonds were given for safe keeping merely. This was not the business of Coster, Knapp & Company. They bought and sold bonds.

On April 23, 1908, sixty of the New York Central bonds and the New York Central and Lake Shore and Lake Shore and Michigan Southern bonds were sold by Coster, Knapp & Company to Grannis & Lawrence for $86,000. The price was paid by check.

Five days later, April 28, 1908, Charles Coster committed suicide and his firm went into bankruptcy.

The plaintiff claims that these bonds were converted by Coster, Knapp & Company. He has not sued Coster, Knapp & Company or, as far as this record shows, made claim against them. All the members of that firm are dead. He has brought this action against Robert C. Lawrence as a member of the firm of Grannis & Lawrence, claiming that he was a purchaser in bad faith, and, therefore, liable to him for the conversion by Coster, Knapp & Company. We have these outstanding facts: Coster, Knapp & Company and Grannis & Lawrence were separate and distinct brokerage houses doing business

with each other. Kittredge was a customer of Coster, Knapp & Company and had given to them bonds to be sold as directed. Coster, Knapp & Company thirteen days later sold the bonds at market price to Grannis & Lawrence and received cash for them.

The plaintiff was obliged to prove the conversion of the bonds by Coster, Knapp & Company. The burden was upon him to prove that they had no right to sell them. Before the jury could give a verdict for the plaintiff it was obliged to find, as a fact, that Coster, Knapp & Company had received no direction to sell them, and had acted contrary to his, Kittredge's, order. As to third parties the presumption was that the brokers having possession of negotiable instruments such as these bonds had the right to sell them. (*Murray* v. *Wagner*, 277 Fed. Rep. 32.)

Mechem on Agency (2d ed. § 2212) says: "If a man voluntarily delivers his property into the customary business possession of one, like an auctioneer, broker or factor, whose ordinary business it is to sell similar property as the agent of the owners, it is said to be a warrantable inference, in the absence of anything to indicate a contrary intent, that he intends his property to be sold also."

Section 91 of the Negotiable Instruments Law (Cons. Laws, ch. 38) defines a holder in due course: "A holder in due course is a holder who has taken the instrument under the following conditions:

" 1. That it is complete and regular upon its face;

" 2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

" 3. That he took it in good faith and for value;

" 4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

After proof of an infirmity or defect the burden, no

doubt, was upon the defendant to prove that he had taken the bonds in good faith, but the burden was upon the plaintiff in the first instance to prove the defect in the title. (*Canajoharie National Bank* v. *Diefendorf*, 123 N. Y. 191.) In other words, the plaintiff was bound to prove that Coster, Knapp & Company had no right to sell the bonds. He had given these negotiable instruments into the hands of brokers who made it a business of selling them. He claims that they had the right to sell them upon the happening of an event, namely, his private instructions to them. The complaint states that the bonds were to be sold when directed. The direction could have been given by word of mouth or by implication. The plaintiff knew whether he gave such direction or not. This defendant could never know. The complaint alleges the negative; it states that no such direction was given. The burden was on the plaintiff to prove this negative. (Chase's Stephen's Digest of Evidence, art. 26; *Harris* v. *White*, 81 N. Y. 532.) All the firm of Coster, Knapp & Company were dead. How could the defendant show that these dead men had received instructions to sell? Plaintiff's counsel admits, as I have quoted above, that the jury would have been justified in this case in finding that Kittredge deposited the bonds for the purpose of having them sold. And he again admits in his brief what we understand to be the law under these circumstances: " We do not dispute that possession of negotiable bonds in the hands of a broker or any one else raises a presumption that he is authorized to sell."

Understanding, therefore, that Coster, Knapp & Company had these bonds under such circumstances and conditions that the presumption might be that they were authorized to sell them or that the jury could find that Kittredge had deposited them for the purpose of sale, we turn to the requests to charge made by the defendant's counsel, which were refused by the trial justice.

The second request reads as follows: "The complaint alleges that the bonds in question were delivered by the plaintiff to Coster, Knapp & Company to be sold by Coster, Knapp & Company as and when directed by the plaintiff. If the plaintiff on or prior to April 23d, 1908, directed the sale of these bonds, your verdict must be for the defendant."

Another request made by the defendant was: "The burden is on the plaintiff to show that he did not on or prior to April 23d, 1908, direct the sale of the bonds; and unless you can find this fact proved by evidence in this case, your verdict must be for the defendant."

Another request reads: "If you are unable to determine for what purpose the plaintiff delivered the bonds in question to Coster, Knapp & Company, your verdict must be for the defendant."

And again: "If you find from the evidence in this case that the plaintiff delivered the bonds in question to Coster, Knapp & Company for the purpose of sale your verdict must be for the defendant."

The ninth request reads: "If you find from the evidence in this case that the plaintiff delivered the bonds in question to Coster, Knapp & Company as a loan your verdict must be for the defendant."

We think, in view of what we have here said, and the way in which this case was presented to the jury, that these requests should have been charged. The court refused to charge them except as he had already touched upon the matter in his main charge.

We do not think that he had sufficiently covered these points in what he had said to the jury, and that his refusal to charge as requested was error.

All that the trial justice said to the jury about the purpose of the delivery by Kittredge of the bonds to Coster, Knapp & Company was: "One of the questions here is as to the manner in which they were turned over to Coster, Knapp & Company by the plaintiff Kittredge.

\* \* \*  Did the plaintiff, Kittredge, put himself in the position where he became a consenting party to anything that Coster might have done with the securities by depositing them with him?  What was the terms upon which they were deposited?  \* \* \*  What is it reasonable to suppose were the conditions under which the plaintiff deposited the securities?  He was a customer of the house.  At the time the concern failed, on the 23d day of April, 1908, he owed Coster, Knapp & Company according to the books of Coster, Knapp & Company, the sum of $60,000 as against the securities.  Between the 10th day of April, when he deposited them, and the 23d day of April, there had been other transactions in which he was interested one way or the other.  Apparently he had been a customer of the house for some time.  Now what is the reasonable inference from all that?  Was he speculating in the street?  Were these securities deposited as against calls for collateral on the purchases that were being made for him, and if so, had he put himself in the position where the securities might be disposed of as they were disposed of by Coster, Knapp & Company to somebody else? "

Nowhere did the judge charge the jury that they must find a verdict for the defendant if Kittredge deposited the bonds for sale or for a loan to Coster, Knapp & Company.  These requests made by the defendant were material and proper and the refusal to charge must have been misleading or confusing to the jury.

It is said, however, by the respondent that there was no proper exception taken to these refusals to charge as requested.

Before the court delivered his charge to the jury the defendant's counsel, as is the custom in the first judicial department, handed up to the trial justice twenty-four requests to charge.  At the end of the charge the court said: " I have gone over all those requests and I have

[236 N. Y. 375]          Opinion, per CRANE, J.                    [July,

incorporated everything there that is proper. I will refuse to charge more than I have charged on either side. I will give you an exception.

" Mr. Van Alstyne: I handed up your Honor some requests. Will your Honor pass on them?

" The Court: I have gone over the requests and I have incorporated everything that is proper to be charged.

" Mr. Van Alstyne: I except to the refusal to charge each of the requests submitted by the defendant."

In *Read* v. *Nichols* (118 N. Y. 224) counsel for the plaintiff presented to the court thirteen separate requests to charge. Some were charged as requested, some were charged in a modified form and others refused. At the close of the charge counsel stated that he excepted " to the refusals to charge as requested by plaintiff's counsel in so far as the court did refuse and to each of the refusals to charge as requested." We held that the exception thus taken was not sufficiently definite and specific to present a question for review.

In *Newall* v. *Bartlett* (114 N. Y. 399, 405) we said: "At the close of the evidence the defendants' counsel presented to the court eight requests to charge the jury. Without making any ruling upon these requests the court proceeded to deliver his charge. At its close the defendants' counsel requested the court to charge upon two additional requests, which the court charged. The counsel then excepted to the instruction embodied in the charge as delivered. The case then shows that ' the court refuses to charge defendants' requests except as already charged, and defendants' counsel takes an exception to the refusal to charge as to each and every one of said requests.' It does not appear which of the requests had been charged, and, consequently, we are not advised as to which of the requests the exceptions apply.

" To raise any question upon the ruling of the trial court for review in this court the exception must be

specific, and point out the particular request to which it is intended to apply."

In *People* v. *Katz* (209 N. Y. 311, 335) this court called attention to the practice in New York city of submitting written requests to the court in advance of the charge, and to the danger of permitting a general exception to the refusal to charge a mass of requests. We there said: " It is never safe to assume that a particular request has or has not been charged until court and counsel are in accord as to what the request actually imports. It frequently happens that a request, apparently incorrect on its face, may easily be so modified or changed as to render it free from reasonable criticism, but that is impossible if counsel may be permitted to defer selection and argument until the case is heard on appeal. It argues nothing to say that the exceptions were taken in this general form with the acquiescence of the trial court."

We have here, however, in this record, something more than a refusal by the trial court to charge the requests made by the defendant other than he had charged. He did not say I have charged some of your requests and I refuse to charge the others. The justice stated that he had incorporated into the charge everything that he thought was proper and refused to charge anything more on either side. It amounted to a refusal to charge further in the case for either side, and not merely a refusal to charge the requests which he had not already charged. Under these circumstances what was trial counsel to do? After such a statement could he with proper decorum read to the judge the second request and ask him to charge it and do the same with the fourth, seventh, eighth and ninth? The trial justice stated that he would not charge anything more for either counsel and voluntarily gave the defendant an exception. The practical situation which confronts a respectful trial counsel seeking to protect a client's rights and at the same time follow the

directions of an able and experienced judge must not be overlooked by appellate courts.

Under these circumstances we think that the exception taken presents for our consideration the requests to charge made by the defendant's counsel.

As the requests referred to by me should have been charged and the refusal to charge them constituting in our judgment material error seriously affecting the defendant's position with the jury, the judgment recovered must be reversed and a new trial granted.

Not a little confusion has arisen in this case by the introduction in evidence of the books of Coster, Knapp & Company covering a period of many years prior to 1908.

The plaintiff attempted to prove that Lawrence in buying the Kittredge bonds was not a holder in due course, but had taken the instruments in bad faith.

Section 98 of the Negotiable Instruments Law reads: " Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course."

When the plaintiff in this case had established or had introduced evidence tending to show that his bonds were converted by Coster, Knapp & Company and sold to Grannis & Lawrence, the burden was on Lawrence to show that he was a holder in due course, had received them in good faith. (*Canajoharie National Bank* v. *Diefendorf*, 123 N. Y. 191; *Harger* v. *Worrall*, 69 N. Y. 370; *Vosburgh* v. *Diefendorf*, 119 N. Y. 357.)

The plaintiff undertook in the first instance to show bad faith on the part of Lawrence and the court charged the jury that the burden rested upon the plaintiff to prove the defendant's bad faith.

There is no claim made that Lawrence had any knowl-

edge that the Kittredge bonds were converted by Coster, Knapp & Company. His bad faith was established, if at all, as a matter of inference from the general business conduct of Coster, Knapp & Company between 1894 and 1905.

Lawrence had gone to work for Coster in 1894 when he was about eighteen years of age. By 1902 he had become head man. In 1905 he left and formed his own firm.

During these eleven years Lawrence had written in the books. These books were offered in evidence. They showed that Coster, Knapp & Company carried fictitious accounts by means of which they were enabled to bucket their customers' orders and appropriate to their own use the cash or securities deposited with them.

All of this evidence was received for the purpose of showing Lawrence's bad faith in receiving Kittredge's bonds in 1908 three years after he left Coster, Knapp & Company. It was not received and could not have been received for the purpose of showing that Kittredge's bonds were converted. The plaintiff states his position or theory in the following words: " The plaintiff's theory was that R. C. Lawrence's knowledge, acquired by long association with Coster, Knapp & Company, first as bookkeeper and afterward as manager, confidential man and keeper of secret records, charged him with notice, that they systematically misappropriated their customers' securities, and were therefore habitual thieves, and that the circumstances surrounding the receipt by Grannis & Lawrence of the bonds in question were of such a character as to put them on notice that the bonds were not the property of Coster, Knapp & Company, but were appropriated to their own use by Coster, Knapp & Company in the same way that they had appropriated bonds of other customers during ten years."

What happened to other securities did not prove or tend to prove that Kittredge's bonds were stolen. The plaintiff's counsel does not claim that he introduced the

books as to transactions with other customers for any such purpose. His claim is that assuming that the bonds were stolen and that his proof showed it, then this evidence of Coster's methods known to Lawrence prior to 1905 was some evidence of Lawrence's bad faith or knowledge on his part that Kittredge's bonds were misappropriated.

The two matters, however, were somewhat confused in the trial of this case as appears from the judge's charge, wherein he said: " Was Lawrence guilty of bad faith? Did he have knowledge brought home to him by this long course of transactions? ; Was he in the position where he should have had knowledge of ˙the fact that Coster, Knapp & Company had for a long time been embezzling the securities of their customers, and that this was one of those transactions? It all largely hinges on that. The question for you to determine is, did the plaintiff make out his cause of action by showing affirmatively ˙that there was bad faith on the part of the defendant Lawrence in the manner in which he came into possession of the securities? "

Lawrence's bad faith was immaterial unless Kittredge's bonds were converted.

Assuming that it was competent to prove Coster's methods of doing business during the years that Lawrence was in his employ as tending to show Lawrence's bad faith in buying from Coster bonds three years after the employment had ended, the evidence at least should have been confined to such matters as came to his knowledge. The trial justice attempted to restrict the evidence to such˙ entries as were made in the books by Lawrence, assuming that the effect or nature of the transaction would be known to the clerk making the entry. He also confined the correspondence to the letters written by the defendant. The books of Coster, Knapp & Company could not be received in evidence against the defendant as though they were his books and he a partner in the firm. He was an employee, whether manager or office

boy; he was not charged with knowledge of the contents of the various book entries. What he himself wrote, if carrying on its face notice of falsity or irregularity or insolvency might charge him with notice of such falsity or irregularity in such particular or of insolvency at such time. A very wide latitude in the examination of these books was allowed and a very liberal rule of evidence as against the defendant applied. We are at a loss to say whether the rulings in this branch of the case are before us.

Counsel insists that exceptions were taken to the reception in evidence of entries in books not in the defendant's handwriting; that the justice changed his rulings and admitted books generally as evidence against the defendant from 1902 during the period he was manager. The record is quite confusing. At one point admissions of handwriting are made and at other places denied. To what books or entries these admissions and denials apply it is impossible to tell. What books or what part of the books are admitted by consent is difficult to determine. There are many exceptions to apparently incompetent proof but no adequate grounds of objection. Again there are sufficient grounds stated and no exceptions taken. Upon this state of the record we will not attempt to review the exceptions, other than those taken to the charge. As there must be a new trial for the reasons stated it is unnecessary for us to do so.

The judgment should be reversed and a new trial ordered, costs to abide the event.

HISCOCK, Ch. J., HOGAN, POUND, McLAUGHLIN and ANDREWS, JJ., concur; CARDOZO, J., not voting.

Judgment reversed, etc.